## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WILFREDO and ODALID BOSQUE, VERA VICENTE MEEK, and JENNIFER WILLIAMS, JENNIFER RYAN and GARY VOLTAIRE, and PAUL MONTERO, on behalf of themselves and all others similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A. d/b/a WELLS FARGO HOME MORTGAGE d/b/a AMERICA'S SERVICING COMPANY,<br><br>Defendant. | C.A. NO. 10-10311 |

## MEMORANDUM OF WELLS FARGO BANK, N.A. IN OPPOSITION TO PLAINTIFFS' MOTION FOR PROVISIONAL CLASS CERTIFICATION

Irene C. Freidel
BBO No. 559051
David D. Christensen
BBO No. 666401
Kristin A. Davis
BBO No. 673491
**K&L GATES LLP**
State Street Financial Center
One Lincoln Street
Boston, MA  02111

Counsel for Wells Fargo Bank, N.A.

November 3, 2010

## TABLE OF CONTENTS

Page

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ............................................ 1

II.   BACKGROUND ................................................................................................. 2

      A.   Procedural History ................................................................................. 2

      B.   The U.S. Treasury's Home Affordable Modification Program and Wells
           Fargo's Participation in HAMP ............................................................. 3

      C.   Plaintiffs' and Borrower Declarants' Loans ......................................... 5

III.  LEGAL STANDARD ......................................................................................... 7

IV.   ARGUMENT ...................................................................................................... 8

      A.   **Rule 23 Prohibits Certification Of A Provisional Preliminary Injunction
           Class.** ..................................................................................................... 8

           1.   **The plain language of Rule 23 limits 23(b)(2) classes to *final*
                injunctive relief.** ........................................................................ 8

           2.   **Rule 23 does not permit certification of "provisional" or
                "conditional" classes.** ............................................................... 10

           3.   **Plaintiffs have failed to offer an evidentiary record from which
                the Court could certify the proposed class.** ............................. 11

      B.   **Plaintiffs' Class Definition Is Overly Broad And Includes Borrowers
           Who Are Not Entitled To Seek Injunctive Relief.** ............................... 13

      C.   **Plaintiffs Cannot Satisfy Requirements of Rule 23(a)** ......................... 17

           1.   **Numerosity/Ascertainability** .................................................... 17

           2.   **Typicality/Adequacy** ................................................................. 20

                (a)   **The named plaintiffs lack standing to seek injunctive
                      relief.** .............................................................................. 21

                (b)   **Plaintiffs cannot otherwise establish typicality and
                      adequacy.** ........................................................................ 22

      D.   **Plaintiffs' Proposed Class Fails To Satisfy Rule 23(b)(2)** .................. 24

1. **Plaintiffs' proposed class lacks homogeneity and cohesion due to numerous individualized issues; Wells Fargo has not acted or refused to act on grounds that apply generally to the class.**...............24

2. **Because the predominant relief sought by plaintiffs is monetary damages, a Rule 23(b)(2) class is improper.**.........................................27

V.    **CONCLUSION**.........................................................................................29

Defendant Wells Fargo Bank, N.A. ("Wells Fargo") respectfully submits this memorandum in opposition to plaintiffs' Motion for Provisional Class Certification.

## I.      INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs' Complaint is predicated on the erroneous premise that borrowers who entered into a HAMP trial period plan and made the requisite payments under the plan are contractually entitled to a permanent HAMP modification regardless of whether they are actually determined eligible based on verified documentation.  Plaintiffs ask the Court to provisionally certify a class under Federal Rule of Civil Procedure 23(b)(2) for the purpose of preliminarily enjoining Wells Fargo from foreclosing on any borrower who received a HAMP trial period plan (prior to March 1, 2010) but who has not yet been determined eligible for a permanent HAMP modification or who was denied for a permanent modification at any time after he or she completed the payments scheduled in their trial plan.

Plaintiffs' Motion for Provisional Class Certification should be denied.  First, as set forth in Wells Fargo's Motion to Dismiss plaintiffs' First Amended Complaint on July 23, 2010, Dckt. No. 15, plaintiffs have no private right of action to bring claims to enforce HAMP and they may not use Massachusetts state law as a substitute to create jurisdiction.  Second, Rule 23 prohibits provisional class certification, which is precisely what plaintiffs ask the Court to order.  Third, plaintiffs' class definition is overbroad and includes numerous borrowers who are not entitled to either a permanent HAMP modification or injunctive relief.  Fourth, plaintiffs cannot satisfy Rule 23's numerosity requirement, because less than 20 Wells Fargo Massachusetts customers – as of October 12, 2010 – were still on a stated trial plan and awaiting a HAMP decision by Wells Fargo.  Finally, due to numerous individualized issues, plaintiffs' proposed class lacks homogeneity and cohesion and any class proceeding, particularly under plaintiffs' class

definition, would be swallowed by individual issues.  For these reasons and the reasons stated more fully below, this action should be dismissed.

## II.    BACKGROUND

### A.    <u>Procedural History</u>

On February 23, 2010, plaintiffs Wilfredo and Odalid Bosque (the "Bosques") and Germano Depina ("Depina") filed a Class Action Complaint against Wells Fargo.  Dckt. No. 1. Plaintiffs asserted breach of contract, breach of the implied covenant of good faith and fair dealing, and promissory estoppel claims based upon Wells Fargo's purportedly unlawful failure to provide plaintiffs with permanent loan modifications under the federal government's Home Affordable Modification Program ("HAMP").  On February 24, 2010, the Bosques and Mr. DePina sent Wells Fargo a Chapter 93A demand letter.  Mr. DePina subsequently accepted a permanent loan modification offer from Wells Fargo.  On June 2, 2010, Wells Fargo filed a motion to dismiss plaintiffs' Complaint in its entirety.  Dckt. No. 5.

On June 25, 2010, the Bosques, Vera Vicente Meek ("Meek") and Jennifer Williams ("Williams") filed a First Amended Class Action Complaint, which dropped Mr. DePina as a plaintiff and added a cause of action under Chapter 93A.  Dckt. No. 10.  Neither Ms. Meek nor Ms. Williams, however, sent Wells Fargo a Chapter 93A demand letter.

On July 23, 2010, Wells Fargo filed a motion to dismiss plaintiffs' First Amended Complaint in its entirety.  Dckt. No. 15.  Plaintiffs filed their opposition on August 11, 2010, and Wells Fargo filed its reply on August 26, 2010.  Dckt. Nos. 24, 28.  On August 17, 2010, plaintiffs filed a Second Amended Complaint (the "Complaint" or "SAC"), which added Jennifer Ryan Voltaire and Gary Voltaire (the "Voltaires") and Paul Montero ("Montero") as plaintiffs. Dckt. No. 26.  Neither the Voltaires nor Mr. Montero served a Chapter 93A demand letter on Wells Fargo.  The parties have agreed that the Court's ruling on Wells Fargo's Motion to

Dismiss the First Amended Complaint will govern the claims pled in the Second Amended

Complaint.

On September 15, 2010, plaintiffs filed their motions for preliminary injunction and for

provisional class certification.  Dckt. Nos. 29, 31.  In connection with those motions, plaintiffs

submitted the declarations of four non-plaintiffs, Franco Zeppa ("Zeppa"), Mary and Bruce

Gracia (the "Gracias"), and Gina Mestone (on behalf of her husband Gary Mestone ("Mestone"))

(collectively, the "borrower declarants").  Dckt. Nos. 35-2, 35-3, 35-4.  Plaintiff Paul Montero

also submitted a declaration.  Dckt. No. 33.  Plaintiffs ask the Court to certify a provisional class

defined as follows:

> All Massachusetts borrowers who entered into a written Trial Period Plan
> ("TPP") Agreement with Wells Fargo and made the payments identified in
> Section 2 of the TPP Agreement, other than borrowers to whom Wells Fargo
> sent either:
>
> (a) a Home Affordable Modification Agreement prior to the date of class
> certification, or
>
> (b) a written denial of eligibility on or before the Modification Effective Date
> identified in Section 2 of the borrowers' TPP Agreement.

Pl. Motion at 1 (Dckt. No. 31).

### B.    The U.S. Treasury's Home Affordable Modification Program and Wells Fargo's Participation in HAMP

In an effort to help borrowers restructure or refinance their mortgages to avoid

foreclosure, the U.S. Treasury announced a national modification program intended to help 3 to

4 million at-risk homeowners avoid defaulting on their mortgage loans by reducing monthly

payment amounts to "sustainable levels."  U.S. Treasury's HAMP Supplemental Directive 09-

01, Dckt. No. 26-2 ("SD 09-01") at 1.  Not all loans serviced by Wells Fargo are eligible for

consideration under HAMP and the participating servicer is not required to modify every

HAMP-eligible loan.  A detailed explanation of Wells Fargo's participation in HAMP is set forth

in the Declaration of Ben Windust dated November 3, 2010 and filed contemporaneously herewith ("Windust Decl.").

The U.S. Treasury has published a series of detailed HAMP guidelines, which set forth the specific criteria to determine a loan's eligibility for a HAMP modification.[1]  Several months after the HAMP program was initiated, the U.S. Treasury expressed concern to Wells Fargo and other servicers based on the relatively low numbers of borrowers who were being placed on HAMP trial plans (or trial period plans ("TPPs") or "starts").  Accordingly, U.S. Treasury officials directed Wells Fargo and other servicers to place borrowers on trial plans first, before borrowers provided the servicer with the supporting documentation necessary to verify their eligibility for a permanent modification.  Windust Decl. ¶ 11.  This policy – to provide rapid payment relief to as many eligible borrowers as possible –  was consistent with the original HAMP guidelines, which permitted servicers to place a borrower on a three-month trial period plan based solely on verbal representations from the borrower.  SD 09-01 at 5, 17.  That policy provides the backdrop for this lawsuit.

Once Wells Fargo received documentation from a borrower on a HAMP trial start, Wells Fargo would determine whether the borrower was eligible for a permanent HAMP modification and if so whether the investor would approve it.  Windust Decl. ¶¶ 14-15 (explaining eligibility process).  Trial period plans were originally intended to last 90 days.  However, statistics provided by the U.S. Treasury have shown that, through July 2010, approximately 45% of active trial plans were more than six months old.  These are commonly referred to as "aged" trial plans. Windust Decl. ¶ 18.

---

[1]     The documentation that the borrower is required to provide to Wells Fargo, pursuant to HAMP guidance (*see* SD 09-01), includes financial information establishing the source of his or her hardship, signed and completed requests for tax return transcripts (or the most recent Federal income tax return, including all schedules and forms), and income verification documentation showing, for example, employment and rental income.  Windust Decl. ¶ 14.

On January 28, 2010, the Treasury Department reversed its policy on stated trial plans, because significant numbers of trial plans were not converting to permanent modifications. *See* Windust Decl. ¶ 19.  Lack of documentation, ineligibility under HAMP requirements, and failure to make all the trial payments as scheduled are the primary reasons that stated trial modifications have not converted to permanent modifications. *Id*.  Accordingly, on January 28, 2010, the U.S. Treasury issued SD 10-01, which signaled a major program change by requiring that servicers verify borrower eligibility for a permanent modification prior to offering a trial loan modification, effective June 1, 2010. *Id*.; SD 10-01, Dckt. No 17-4, at 1.  Wells Fargo concurred with the program change and led the way by requiring – as of March 1, 2010 – that borrower eligibility for HAMP be established based on verified documentation *before* borrowers obtain a HAMP trial plan.  Windust Decl. at ¶ 23.  This policy change directly refutes plaintiffs' primary argument, namely, that borrowers placed on trial plans prior to June 1, 2010 (or March 1, 2010 in the case of Wells Fargo) were guaranteed a permanent modification if they made three payments under their TPP.

For loans referred to foreclosure prior to the initiation of a HAMP trial plan, homeowners whose loans remain active in HAMP (regardless of the age of the trial plan) with Wells Fargo will not be subject to a foreclosure sale while they are awaiting a decision from Wells Fargo as to whether their loans are eligible for permanent modification.  It is also Wells Fargo's policy not to initiate a referral to foreclosure or complete a foreclosure sale for borrowers who are participating in a HAMP trial plan while they are awaiting a decision from Wells Fargo as to eligibility for a permanent modification.  Windust Decl. ¶ 26.

### C.     Plaintiffs' and Borrower Declarants' Loans

All of the named plaintiffs, as well as the borrower declarants, have first-lien residential mortgage loans that Wells Fargo services (a total of 8 different loans).  At some point, all of

5

these borrowers have fallen significantly behind on their mortgage payments.  Declaration of

Wells Fargo dated November 5, 2010 filed herewith ("Wells Fargo Decl.") ¶¶ 9, 27, 55, 75, 101,

124, 144, 181.  Wells Fargo has worked extensively with each of these borrowers to review

potential loan workout options, including HAMP modifications.  *See, e.g., id.* ¶¶ 12, 16, 19, 24.

Wells Fargo has reviewed the servicing history for each borrower's loan, and a detailed

discussion of Wells Fargo's review of the loans is set forth in the Wells Fargo Declaration filed

with the Court on November 5, 2010.

      In summary, however, Wells Fargo's review of the eight loans at issue shows that one of

the eight borrowers has been placed in a permanent modification outside of HAMP (Zeppa), one

has been offered a special forbearance agreement (Gracia), one has been offered a HAMP

permanent modification (Bosque), and one is in the process of obtaining a permanent

modification (Mestone).  The remaining four borrowers (Williams, Meek, Montero and Voltaire)

were exhaustively reviewed for loss mitigation options, including HAMP, and were not

determined eligible for a variety of reasons including insufficient income, a negative NPV test

result, and failure to provide the required eligibility documentation.  Nonetheless, Wells Fargo

has agreed to re-review each of their loans for HAMP eligibility.  *See* Wells Fargo Decl. ¶¶ 179,

72, 121, 141.

      Plaintiffs argue that they were each entitled to obtain a permanent HAMP modification

when they were placed on a HAMP TPP because they allege (1) they provided all necessary

information to Wells Fargo before they received the TPP, (2) Wells Fargo was obligated to

obtain investor approval before providing them with TPPs, and (3) they made all payments as

scheduled under their TPPs.  The facts, and HAMP guidelines, however, refute plaintiffs' claims.

As discussed below and at length in the Windust Declaration, Wells Fargo was not obligated to

make final eligibility determinations before placing any borrower on a TPP and, indeed, it was encouraged not to do so by U.S. Treasury policy. Had Wells Fargo placed Ms. Williams, Ms. Meek, Mr. Montero, or the Voltaires in permanent HAMP modifications, it would have done so without investor approval and without compliance with HAMP program guidelines. Moreover, the facts show that, prior to being placed on HAMP trial plans, these borrowers had not provided Well Fargo with all of the documents that it needed to determine their final HAMP eligibility.

Because they have not received a permanent HAMP modification, Mr. Montero and the remaining plaintiffs and borrower declarants all claim that they are subject to imminent foreclosure on their properties. However, Wells Fargo has agreed not to foreclose on any of the properties that secure plaintiffs' and the borrower declarants' loans until their claims are resolved. *See* Freidel Declaration dated November 3, 2010 filed herewith ("Freidel Decl.") ¶¶ 2-4.

## III.   LEGAL STANDARD

Plaintiffs bear the burden of demonstrating that the putative class meets the four requirements of Federal Rule of Civil Procedure 23(a), as well as the requirements of Rule 23(b)(2). Fed. R. Civ. P. 23; *DeRosa v. Mass. Bay Commuter Rail Co.*, 694 F. Supp. 2d 87, 95 (D. Mass. 2010); *Mogel v. UNUM Life Ins. Co. of Am.*, 646 F. Supp. 2d 177, 181 (D. Mass. 2009). Under Rule 23(a), the party seeking class certification must establish: (1) that the class is so large that joinder of all members is impracticable; (2) that there are one or more questions of law or fact common to the class; (3) that the named parties' claims are typical of the class; and (4) that the class representatives will fairly and adequately protect the interests of other members of the class. Fed. R. Civ. P. 23(a); *Mogel*, 646 F. Supp. 2d at 181. Plaintiffs must provide facts to satisfy these requirements, and, contrary to plaintiffs' assertion, cannot simply reply upon the allegations in their Complaint. *See DeRosa*, 694 F. Supp. 2d at 95 ("court considers only

admissible evidence in determining whether Rule 23's requirements are met"); *In re PolyMedica Corp. Sec. Litig.*, 432 F.3d 1, 6 (1st Cir. 2005) (following majority approach requiring courts to consider "whatever legal and factual inquiries are necessary to an informed determination of the certification issues").

The Court, in turn, must conduct a searching and "rigorous analysis" into whether plaintiffs have met their burden. *DeRosa*, 694 F. Supp. 2d at 95; *Mogel*, 646 F. Supp. 2d at 181. While courts do not adjudicate the merits on a motion for class certification, "when considering disputed factual and legal premises…, a district court may 'probe behind the pleadings to formulate some prediction as to how specific issues will play out.'" *DeRosa*, 694 F. Supp. 2d at 95; *see also General Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982); *In re PolyMedica Corp.*, 432 F.3d at 6 (endorsing a "case specific analysis that [goes] well beyond the pleadings"); *Mogel*, 646 F. Supp. 2d at 181; *Markarian v. Conn. Mut. Life Ins. Co.*, 202 F.R.D. 60, 63 (D. Mass. 2001) ("motion to certify 'generally involves considerations ... enmeshed in the factual and legal issues'"). Accordingly, such an analysis will likely involve "some critical assessment regarding the merits of the case." *DeRosa*, 694 F. Supp. 2d at 95 (courts "not required 'to put blinders on as to an issue simply because it implicates the merits of the case'"). Plaintiffs ignore these standards, offering no evidence as to how they will prove their claims on a class-wide basis. Seeking only "provisional" class certification does not allow plaintiffs to avoid this requirement.

## IV.   ARGUMENT

### A.   Rule 23 Prohibits Certification Of A Provisional Preliminary Injunction Class.

#### 1.   The plain language of Rule 23 limits 23(b)(2) classes to *final* injunctive relief.

Assuming the requirements of Rule 23(a) are satisfied, Rule 23(b)(2) permits certification of a class if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that *final* injunctive relief … is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2) (emphasis added).  Plaintiffs' motion for provisional class certification, however, is solely predicated on their request for preliminary injunctive relief.  *See* Pl. Motion at 2; Pl. Memo. at 1-2.  Accordingly, plaintiffs are not entitled to certification of the proposed class.  *See Broadnax v. U.S. Parole Comm'n*, 116 F.3d 489, 1997 WL 346042, at *2 (10th Cir. June 24, 1997) (affirming denial of plaintiffs' motion to certify a preliminary injunction class because "by its own language Rule 23(b)(2) clearly does not apply"); 7AA Charles Alan Wright, et al., Fed. Prac. & Proc. Civ. § 1775 (3d ed. 2005) (under Rule 23(b)(2), "the class must be seeking a 'final' injunction; a request for a temporary-restraining order or a preliminary injunction does not qualify"); *see also Andrews v. Chevy Chase Bank*, 545 F.3d 570, 576-7 (7th Cir. 2008) (Rule 23(b)(2) class is prohibited where predicated relief is not final).

Plaintiffs cite two cases in support of their argument that a preliminary injunction class may be certified under Rule 23(b)(2).  Neither supports plaintiffs' argument.  First, *Heights Community Congress v. Rosenblatt Realty, Inc.*, 73 F.R.D. 1 (N.D. Ohio 1975), relies upon an outdated version of the Federal Rules.  That decision, now over thirty-five years old, cites to Rule 23(c)(1) as authority for a provisional preliminary injunction class.  73 F.R.D. at 4. However, the language of Rule 23(c)(1) that previously permitted certification of provisional or conditional classes was eliminated in 2003, as discussed in further detail below.  *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 319 (3d Cir. 2009).  Similarly, *Tefel v. Reno*, 972 F. Supp. 608 (S.D. Fla. 1997), which provisionally certified a class, was decided prior to the 2003 rule change.  Moreover, the Rule 23 analysis in *Tefel* is minimal at best.  972 F. Supp.  at 617-18.

Indeed, the *Tefel* court, despite its certification of an injunctive relief class, does not even mention Rule 23(b)(2).  *See id.*  Regardless, to the extent that *Heights Community Congress* or *Tefel* permitted preliminary injunction classes, they are in direct contravention of the plain language of Rule 23(b)(2), and other federal courts do not appear to have followed their reasoning.  Accordingly, there are no legally viable grounds for plaintiffs to seek provisional certification of a preliminary injunction class.

> **2.    Rule 23 does not permit certification of "provisional" or "conditional" classes.**

Plaintiffs' request to "provisionally" certify a class is improper in that it relies upon a "certify now, worry later" approach to class certification that has been rejected by the 2003 amendments to Federal Rule 23.  Specifically, the 2003 amendments to Rule 23(c)(1) eliminated the language that class certification "may be conditional."  *In re Hydrogen Peroxide*, 552 F.3d at 319.  The Standing Committee on Rules of Practice and Procedure, which oversaw the amendments, "advised: [t]he provision for conditional class certification is deleted to avoid the unintended suggestion, which some courts have adopted, that class certification may be granted on a *tentative* basis."  *Id.* at 319-20 (emphasis added); *see also Hohider v. United Parcel Serv.*, 574 F.3d 169, 202 (3d Cir. 2009) ("courts should not grant certification except after *searching inquiry*, and … should not rely on later developments to determine whether certification is appropriate") quoting Moore's Fed. Prac. § 23.80[2] (3d ed. 2008) (emphasis added)).

Yet, plaintiffs seek just that, a *tentative* certification of the proposed class based on nothing more than the allegations in their complaint.  Pl. Memo. at 9-10.  Contrary to plaintiffs' suggestion, "the requirements set out in Rule 23 are not mere pleading rules."  *In re Hydrogen Peroxide*, 522 F.3d at 316; *see College of Dental Surgeons of P.R. v. Conn. Gen. Life Ins. Co.*, 585 F.3d 33, 41-42 (1st Cir. 2009) ("[r]eviewing the complaint alone is not normally a suitable

method for determining whether a class eventually can be certified" (citing *In re Hydrogen Peroxide*)).  Rather, "[a] court may not and should not certify a class action without a rigorous examination of the facts to determine if the certification requirements of Rule 23(a) and (b) have been met."  *In re Hydrogen Peroxide*, 522 F.3d at 316 n.15 (quoting Moore's Fed. Prac. § 23.61[1]); *see DeRosa*, 694 F. Supp. 2d at 95; *In re PolyMedica Corp.*, 432 F.3d at 6 (endorsing a "case specific analysis that [goes] well beyond the pleadings").  Indeed,

> [i]f it were appropriate for a court simply to accept the allegations of a complaint at face value in making class action findings, every complaint asserting the requirements of Rule 23(a) and (b) would automatically lead to a certification order, frustrating the district court's responsibilities for taking a 'close look' at relevant matters, for conducting a 'rigorous analysis' of such matters, and for making 'findings' that the requirements of Rule 23 have been satisfied.

*Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 365 (4th Cir. 2004) (citation omitted).

Plaintiffs cite to no authority that post -dates the 2003 amendments to Rule 23 or otherwise holds that plaintiffs satisfy their Rule 23 burden by resting on their Complaint.  Because provisional or conditional certifications are inappropriate under Rule 23, plaintiffs' motion should be denied.

### 3.   Plaintiffs have failed to offer an evidentiary record from which the Court could certify the proposed class.

As demonstrated above, class certification requires a "rigorous analysis" that goes beyond the pleadings.  Plaintiffs have failed to satisfy this standard choosing instead to rest on their pleadings and the purported "expert" report of Chris Wyatt.  Pl. Memo. at 4-6.  The First Circuit, however, has recently held:

> [i]n all but the clearest of cases, the existence vel non of a sufficiently defined class is appropriately addressed after some development of the facts and under Rule 23's established protocol for weighing the propriety of class certification.  Reviewing the complaint alone is not normally a suitable method for determining whether a class eventually can be certified.

*College of Dental Surgeons of P.R.*, 585 F.3d at 41 (citing *In re Hydrogen Peroxide*, 552 F.3d at

316 n.15).  Indeed, the First Circuit has reversed and remanded class certifications where the

factual record has been insufficiently developed.  *See In re New Motor Vehicles Canadian*

*Export Antitrust Litig.*, 522 F.3d 6, 26, 29-30 (1st Cir. 2008) (remanding case to develop factual

record for class certification); *see also In re Digital Equip. Corp. Sec. Litig.,* 1985 WL 29948, at

*1 (D. Mass. Mar. 20, 1985).

The 2003 amendments to Rule 23 demonstrate that development of a sufficient factual

record is critical to the certification analysis.  *See In re Hydrogen Peroxide*, 522 F.3d at 316 n.15

("court may not and should not certify a class action without a rigorous examination of the facts

to determine if the certification requirements of Rule 23(a) and (b) have been met"); *see also In*

*re New Motor Vehicles*, 522 F.3d at 17, 24 ("[i]t is a settled question that some inquiry into the

merits at the class certification stage is not only permissible but appropriate to the extent that the

merits overlap the Rule 23 criteria").  Here, however, the parties have yet to begin the discovery

process, an appropriate status in light of Wells Fargo's pending motion to dismiss that would

dispose of plaintiffs' entire case.  As such, assuming that plaintiffs even have the right to pursue

their claims, Wells Fargo has not had the opportunity to serve written discovery on plaintiffs or

take their depositions, discovery that will shed light on whether plaintiffs can satisfy the

requirements of Rule 23(a) and (b).

For example, plaintiffs' Complaint makes sweeping allegations about the policies and

practices of Wells Fargo concerning loan modifications under HAMP as well as foreclosures,

and plaintiffs assert these practices are common to the proposed class.  *See* Pl. Memo. at 12 ("All

of these claims are based on the same standardized conduct or practices.").  Yet, plaintiffs fail to

offer any evidence concerning those practices other than the borrower declarations and the so-

called "expert" report of Chris Wyatt, an individual with absolutely no first-hand knowledge of

Wells Fargo's practices.  Even if plaintiffs' discussion of Wells Fargo's policies and practices

was accurate, they could not prove any of their claims (individually or class-wide) on this

evidence.

Wells Fargo's review of the borrower declarants' servicing histories shows plainly that

while Wells Fargo certainly has defined policies and procedures with respect to HAMP

eligibility determinations, the application of those policies to each individual's financial

circumstances results in necessarily varying outcomes.  The histories show that (1) Wells Fargo

has exhaustively reviewed each borrower for eligibility under HAMP and other loss mitigation

options; (2) Wells Fargo has placed borrowers into modifications when feasible and denied other

borrowers for modifications when the borrower does not meet eligibility criteria; and (3) each

borrower's servicing history is dramatically individualized.  *See*, *generally*, Wells Fargo Decl.

and Windust Decl.  Whether Wells Fargo has liability to any one plaintiff (which it denies) will

depend on the individual facts pertaining to each plaintiff, not on the sweeping and irrelevant

conclusions offered by plaintiffs' purported expert.  In short, plaintiffs have asked the Court to

certify a class without providing a sufficient record from which the Court could conduct a

"rigorous analysis" sufficient to find that class certification is appropriate.  Indeed, the record

Wells Fargo submitted to the Court shows that the opposite conclusion should be reached.

**B.      Plaintiffs' Class Definition Is Overly Broad And Includes Borrowers Who
         Are Not Entitled To Seek Injunctive Relief.**

"It is well-established that members of a plaintiff class must all have the legal right to

bring suit against the defendant on their own; inclusion of those without such standing renders

the class overbroad."  *In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389, 393 n.2 (D.

Mass. 2007).  Here, plaintiffs seek a preliminary injunction that would prohibit Wells Fargo from

foreclosing on their mortgages pending resolution of this lawsuit.  To obtain a preliminary

injunction, plaintiffs must establish, among other things, that they face a "real and immediate"

threat of irreparable harm and that they have a likelihood of success on the merits.  *City of*

*Lowell v. Enel N. Am., Inc.*, 705 F. Supp. 2d 116, 119, 121 (D. Mass. 2010).  A real and

immediate threat must be "grounded on something more than conjecture, surmise, or [plaintiffs']

unsubstantiated fears of what the future may have in store."  *Id.* at 119; *see Summers v. Earth*

*Island Inst.*, 129 S. Ct. 1142, 1149 (2009) (Article III standing to seek injunctive relief requires

that plaintiffs face a threat of injury that must be actual and imminent, not conjectural or

hypothetical); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  The putative class

plainly includes borrowers who are either not at risk of imminent foreclosure and/or are not

likely to be able to succeed on the merits of their claims that they are entitled to permanent

HAMP modifications under Massachusetts law.

      First, the class includes borrowers who have neither been granted a permanent HAMP

modification nor been denied for a permanent modification.  Simply by being "in limbo" with

respect to a permanent HAMP modification, however, does not threaten borrowers with a real

and immediate threat of foreclosure.  Wells Fargo will not complete a foreclosure sale against

borrowers that are being considered for HAMP and for whom Wells Fargo has yet to make a

final determination as to their eligibility.  *See* Windust Decl. ¶ 26.  This policy is consistent with

the U.S. Treasury's guidance that foreclosure activity be suspended until a servicer has made a

full evaluation of a borrower's eligibility for HAMP and that "the home will not be sold at a

foreclosure sale while the borrower is being considered for HAMP or while the borrower is

making payments under a TPP."  *See* Making Home Affordable Handbook for Servicers of Non-

GSE Mortgages, Dckt. 28-2 ("MHA Handbook") at 26-27; *see also id.* at 25 ("If the loan is

scheduled for foreclosure sale when the borrower requests the NPV values, the servicer may not complete the foreclosure sale until 30 calendar days after the servicer delivers the NPV values to the borrower.").

Second, plaintiffs' proposed class definition includes borrowers who have obtained permanent modifications outside the HAMP program (such as Mr. Mestone and Mr. Zeppa), borrowers who will obtain permanent HAMP modifications (such as Mr. DePina and the Bosques), and other borrowers who simply have not complied with all of their obligations under the TPP. Indeed, nothing in plaintiffs' proposed class definition would require a class member to have submitted the income documentation required by the TPP, which information is mandatory before a borrower can receive a HAMP modification. *See* Wells Fargo Decl. Exs. 4, 6, 17, 20, 32, 36, 47, 62, ¶ 1.D, 1.E; SD 09-01 at 5-8. Plaintiffs' proposed class could also include borrowers who could no longer represent (or who continued to misrepresent) that they were suffering a financial hardship, were in default or imminent danger of default, or that the subject property was their primary residence. *See* Wells Fargo Decl. Exs. 4, 6, 17, 20, 32, 36, 47, 62 (¶ 1.A, 1.B). None of these borrowers would be entitled to the requested injunctive relief.

Plaintiffs argue that by offering borrowers a TPP, Wells Fargo necessarily determined them eligible for a permanent HAMP modification, *see, e.g.,* Wyatt Report at 5, and thus, upon receipt of a TPP, were not required to submit further information. However, plaintiffs have submitted no evidence and pointed to no authority demonstrating that Wells Fargo made any such determination. To the contrary, prior to March 1, 2010 (which time period applies to all of the named plaintiffs), Wells Fargo – consistent with Treasury policy and as with all major servicers – placed borrowers on TPPs based upon verbal statements of income and hardship, rather than on verified documentation. *See* Windust Decl. ¶ 23. Wells Fargo's practice was

entirely consistent with HAMP guidelines under which a servicer's placement of a borrower into

a trial modification was no guarantee or final determination that the borrower was eligible for a

permanent loan modification after he or she made three or more trial payments.  *See* SD 09-01 at

15; SD 10-01 at 1 ("Supplemental Directive 09-01 gave servicers the option of placing a

borrower into a trial period plan based on verbal financial information … subject to later

verification during the trial period.").

Even so, the record is clear that even the borrower declarants had not satisfied the

requirements for HAMP eligibility when they obtained their TPPs.  For example, the Gracias and

Voltaires were denied a permanent HAMP modification, because they failed to submit all of the

documentation necessary to support their income.  Wells Fargo Decl. ¶¶ 45, 135.  Ms. Meek and

Ms. Williams failed to qualify for a permanent modification because their loans failed the NPV

test.  *See id.* ¶ 68, 157.  Further, Mr. Mestone, Ms. Williams, and Mr. Zeppa did not qualify for a

permanent modification, because they did not have sufficient income to create an affordable

payment equal to 31% of their reported monthly gross income.  *See id.* ¶¶ 82, 157, 199.   None of

these borrowers could establish that Wells Fargo breached a contract with them to permanently

modify their loans or is subject to promissory estoppel or Chapter 93A damages.  *See* Wells

Fargo's Opp. to Pls. Motion for Preliminary Injunction at sections IV.B.1 and IV.B.3.

Plaintiffs even admit that the defined class is overbroad, when they state that "requested

injunction is necessary … to prevent ongoing inappropriate foreclosure activity … against *some*

members of the putative class."  Pl. Memo. at 1 (emphasis added).  Plaintiffs recognize that –

even in their view – not all putative class members face a real and imminent threat of

foreclosure.  Accordingly, because the defined class is overbroad, it cannot be certified.  *See*

*Healey v. Murphy*, 2009 WL 6613209, at *6-7 (D. Mass. Jan. 14, 2009) (overbroad class not

subject to certification); *Kempner v. Town of Greenwich*, 249 F.R.D. 15, 18 (D. Conn. 2008)

("the class 'must be defined in such a way that anyone within it would have standing'"); *Miller v.

Univ. of Cincinnati*, 241 F.R.D. 285, 288 (S.D. Ohio 2006) ("[a] properly defined class includes

only members who would have standing to bring suit in their own right").

### C.   Plaintiffs Cannot Satisfy Requirements of Rule 23(a)

#### 1.   Numerosity/Ascertainability

To satisfy the numerosity requirement, plaintiff must establish that the class "is so

numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *DeRosa*, 694

F. Supp. 2d at 97.  Although the Court may draw reasonable inferences from the evidence

presented, *DeRosa*, 694 F. Supp. 2d at 97, plaintiffs cannot satisfy the numerosity requirement

by reference to speculative evidence.  *Makuc v. Am. Honda Motor Co.*, 835 F.2d 389, 394-95

(1st Cir. 1987).  Generally, "a very small class may not meet the numerosity requirement because

joinder of all members is practicable."  *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 131-32

(1st Cir. 1985).  Courts have typically held that 40 is the presumptive threshold that makes

joinder impracticable.  *But see id.* at 132 (class of 49 members did not satisfy numerosity).  Here,

plaintiffs cannot satisfy the numerosity requirement because the proposed class, if defined to

include only Massachusetts borrowers on aged, stated TPPs who are in "HAMP limbo," consists

of less than twenty borrowers.

To the extent that plaintiffs continue to pursue a class that is defined as including all

Massachusetts borrowers who received a HAMP denial after the "Modification Effective Date,"

the members of the putative class cannot be ascertained (nor could they be provided with notice

of any provisional class certification).  Such a class definition is unworkable.  Plaintiffs define

the Modification Effective Date as "the first day of the month following the month in which the

last Trial Period Payment is due." Pl. Memo. at 4.  Plaintiffs' definition does not line up with

HAMP program documents.  Each form TPP used by Wells Fargo has a "Modification Effective Date."  The Modification Effective Date is the date on which a borrower's permanent modification becomes effective and, according to the MHA Handbook (section 9.1), occurs "when: (i) the borrower has satisfied all of the requirements of the TPP Notice, (ii) the borrower and the servicer have executed the Modification Agreement, (iii) the servicer has returned a fully executed copy of the Modification Agreement to the borrower, and (iv) the Modification Effective Date provided in the Modification Agreement has occurred."  *See also* Windust Decl. n.4.  The Modification Effective Date is also defined in the MHA Handbook as "the due date for the first payment under the permanent modification."  Section 6.3.3; *see* Windust Decl. at n. 4 and Exhibit 2 (a blank form TPP used by Wells Fargo prior to March 1, 2010).

If a borrower was determined ineligible for a permanent modification, there is no Modification Effective Date applicable to that borrower.  Even if there was such a date for each borrower, Wells Fargo still could not determine the date upon which a borrower in a stated trial plan received a denial notice from Wells Fargo without performing a file-by-file review of the borrower's servicing records.[2]  Windust Decl. ¶ 37; *see also Crosby v. Social Sec. Admin.*, 796 F.2d 576, 580 (1st Cir. 1986) (a class is not readily ascertainable where individualized fact finding is necessary to determine whether a particular individual is a member of the class).

Moreover, plaintiffs offer no justification for their assertion that the notice of a denial of a HAMP modification more than one month after the final TPP payment is due entitles a borrower

---

[2]     For this same reason, plaintiffs' proposed class definition is unworkable for purposes of identifying class members to send them the required notice.  Further, to the extent that the Court certifies a class, the cost of notifying the class must be borne by plaintiffs.  *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178-79 (1974).

to a permanent modification. To the contrary, borrowers frequently had not submitted all of their required documentation in advance of plaintiffs' alleged "Modification Effective Date," making it impossible for Wells Fargo to make a final HAMP determination. For example, in the case of the Gracias, under plaintiffs' definition, their Modification Effective Date would have been May 1, 2010. Yet, as of that date, the Gracias had not sent their federal tax return as HAMP requires. *See* Wells Fargo Decl. ¶ 42; *see also id.* ¶¶ 132-135 (Voltaires failed to submit all necessary documentation, including an IRS Form 4506-T by March 1, 2010, the purported "Modification Effective Date"). Plaintiffs' arbitrary deadline would impose penalties on Wells Fargo for providing borrowers with additional time to send in their documentation instead of denying them outright by the so-called "Modification Effective Date."

Rather than focus on arbitrary denial deadlines created by plaintiffs, the Court should review numerosity by considering the number of borrowers who are on aged stated TPPs but who have not been offered a permanent modification and whose HAMP eligibility has not been finally determined. Indeed, this is the number Mr. Wyatt speculates about (*see* Wyatt Report at 16-17), and nowhere in his analysis does Mr. Wyatt attempt to quantify those borrowers who did not receive a denial letter by the "Modification Effective Date." Indeed, the Wyatt Report, which guesses that there are at least 75 Massachusetts borrowers in aged TPPs who have yet to receive a permanent modification (*see* Wyatt Report at 17) cannot be used to dispute the actual numbers Wells Fargo provides. Mr. Wyatt's numbers are based on nothing more than national averages across all servicers.

The actual facts show that as of October 12, 2010, Wells Fargo had 93 Massachusetts customers who Wells considered in "active" stated trial plans. Windust Decl. ¶ 35. In other words, those borrowers received their HAMP TPP from Wells Fargo before March 1, 2010. *Id.*

Of those 93 borrowers, Wells Fargo determined that 58 are eligible for a permanent modification and, therefore, those borrowers are at varying stages of having their modifications finalized.  *Id*. The remaining 35 borrowers are in stated trial plans, but have not yet been determined eligible for a permanent modification, and they also have not been denied a modification.  Of those 35, 17 individuals are in bankruptcy.  *Id*.  Accordingly, as of October 12, 2010, there were 18 borrowers in Massachusetts who were not in bankruptcy, who were on stated, aged trial plans, and whose eligibility determination for a permanent modification Wells Fargo had not yet made. Undoubtedly, by the time the Court considers plaintiffs' Motion, the number will be smaller than 18, as it continues to shrink as more stated, aged TPPs are resolved.  Such a small potential class is insufficient to satisfy the numerosity requirement.  *Andrews*, 780 F.2d at 131-32.  This is particularly so where, as here, the incentive for each potential class member to file suit on their own is high.  Class certification should be denied on numerosity alone.

## 2.    Typicality/Adequacy

The typicality analysis tends to merge with the adequacy element of Rule 23(a), because "[b]oth serve as guideposts for determining whether the plaintiffs' claims and the class claims are so inter-related" to fairly protect the absent putative class members.  *DeRosa*, 694 F. Supp. 2d at 100; *In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. at 394.  The adequacy requirement analyzes whether there is a potential for conflict among class members and whether there is an assurance of vigorous prosecution of the action.  *DeRosa*, 694 F. Supp. 2d at 100. Similarly, typicality requires that the named plaintiffs' "injuries arise from the same events or course of conduct as do the injuries of the class."  *Id*.  "The operative question [under the typicality analysis] is whether a lead plaintiff will necessarily present the absent class members' claim in presenting his own."  *In re Organogenesis Sec. Litig.*, 241 F.R.D. 397, 400-01 (D. Mass. 2007).  Further, "[b]oth typicality and adequacy may be defeated where the class representatives

are subject to unique defenses which threaten to become the focus of the litigation." *DeRosa*, 694 F. Supp. 2d at 100.  Plaintiffs fail to satisfy either requirement.

**(a)    The named plaintiffs lack standing to seek injunctive relief.**

Here, the named plaintiffs lack standing to seek the requested relief and thus fail the typicality and adequacy requirements.  *See In re Organogenesis*, 241 F.R.D. at  405 ("[i]t should be obvious that there cannot be adequate typicality between a class and a named representative unless the named representative has individual standing to raise the legal claims of the class" (citing *Prado-Steiman v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000)); *Healey*, 2009 WL 6613209, at *10 (adequacy not satisfied where plaintiff cannot seek the relief sought for the class); *see also In re New Motors Vehicles*, 522 F.3d at 15-16 (reversing Rule 23(b)(2) certification where named plaintiffs lacked standing to pursue injunctive relief); *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 658 F. Supp. 2d 299, 303 (D. Mass. 2009) ("[i]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class" (quoting *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)).

Standing to seek injunctive relief requires that the named plaintiffs proffer evidence of a real and immediate – as opposed to a merely conjectural or hypothetical – threat of future injury, which injury will be redressed by a favorable decision.  *Summers*, 129 S. Ct. at 1149; *Lujan*, 504 U.S. at 560-61.  Past exposure to unlawful conduct in itself is insufficient to establish an imminent threat of harm, and thus assertions that plaintiffs might "some day" be subject to foreclosure by Wells Fargo are not sufficient to confer standing.  *Summers*, 129 S. Ct. at 1150-51; *see Lujan*, 540 U.S. at 564 (past exposure to unlawful conduct "proves nothing … if unaccompanied by any continuing, present adverse effects").  Because plaintiffs face no real or immediate threat of foreclosure, they lack standing to seek the requested injunctive relief.

21

Prior to the filing of plaintiffs' motions for provisional class certification and for preliminary injunction, Wells Fargo entered into an agreement with plaintiffs that it would not continue with or initiate any foreclosure proceedings until this lawsuit was adjudicated on the merits. *See* Freidel Decl. ¶¶ 2-4. Moreover, Wells Fargo has put a foreclosure hold on plaintiffs' loss mitigation files such that no foreclosure proceedings will occur (or continue) while this lawsuit is pending (and it has agreed to stay any post-foreclosure transfer in the case of the Voltaire property). Freidel Decl. ¶¶ 2-4; Wells Fargo Decl. ¶¶ 25, 53, 72, 93, 121, 140, 179, 215. Moreover, Wells Fargo has agreed to re-review for HAMP each plaintiff and borrower declarant's loan to the extent that their loan has not already been modified. Wells Fargo Decl. ¶¶ 72, 121, 141, 179. Because of this agreement and the hold on their files, plaintiffs do not face a real and immediate threat of foreclosure. Plaintiffs also cannot satisfy the redressability prong of Article III standing because the very relief that they seek, an injunction preventing foreclosure pending a decision on the merits of his claim, is the precise relief to which Wells Fargo has agreed with respect to their mortgages. The requested injunction then would be superfluous and have no meaningful impact. *See Pritikin v. Dep't of Energy*, 254 F.3d 791, 799 (9th Cir. 2001) (redressability requires that a decision in plaintiff's favor "will produce tangible, meaningful results in the real world").

**(b)      Plaintiffs cannot otherwise establish typicality and adequacy.**

It is axiomatic "that a class representative must be part of the class" to seek class certification. *Healey*, 2009 WL 6613209, at *2 (quoting *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)). Here, the named plaintiffs do not belong to the proposed class and thus do not possess typical claims and are not adequate representatives. For example, the class definition excludes those Massachusetts borrowers to whom Wells Fargo sent "a Home Affordable Modification Agreement prior to the date of class certification." Pl. Memo. at 3.

22

However, Wells Fargo offered the Bosques a permanent HAMP modification on April 1, 2010. Wells Fargo Decl. ¶ 25.  That the Bosques did not accept the modification is irrelevant to the question of whether they fit within the proposed definition, but it is further evidence of why a class should not be certified.

Further, the proposed class definition assumes that borrowers were determined eligible for HAMP before they received a HAMP TPP from Wells Fargo.  But, Wells Fargo's review of the borrower declarants' and plaintiffs' servicing histories showed that none of them had submitted all of the information required of them before they obtained their TPPs.  For example, the Voltaires never submitted the form 4506-T.  Wells Fargo Decl. ¶ 135.  The putative class also includes borrowers who failed the NPV test, like Ms. Williams and Ms. Meek.  Wells Fargo Decl. at ¶¶ 157, 68.  Plaintiffs will argue that Wells Fargo was required to perform the NPV test before borrowers received TPPs, but nothing in HAMP required this and doing so was contrary to U.S. Treasury policy, because NPV tests could not be run until the servicer received verified income documentation from the borrower, which did not occur (prior to March 1, 2010) until after the TPP started.  At bottom, plaintiffs' putative class definition is non-sensical, and the named plaintiffs are themselves excluded from it.

For the same reason, each named plaintiff (and each borrower declarant) is subject to unique defenses that are likely to become the focus of the litigation.  *DeRosa*, 694 F. Supp. 2d at 100 ("unique defenses which threaten to become the focus of the litigation" undermine both the typicality and adequacy requirements).  As discussed herein, there are a number of reasons why Wells Fargo may have denied a particular borrower for a permanent loan modification.  *See, e.g.*, Windust Decl. ¶ 23.  Moreover, these individual issues have nothing to do with Wells Fargo's HAMP staffing or procedures, but rather have everything to do with borrowers' own factual and

23

financial circumstances.  Plaintiffs' own loan histories reveal such issues. For all of these reasons, none of the named plaintiffs are typical of the putative class, and none is an adequate class representative.

**D.      Plaintiffs' Proposed Class Fails To Satisfy Rule 23(b)(2)**

A class certified under Rule 23(b)(2) "is a mandatory class from which 'class members have no absolute right to opt out.'"  *DeRosa*, 694 F. Supp. 2d at 94.  Accordingly, Rule 23(b)(2) class members "are generally bound together through 'preexisting … relationships' or by some significant common trait such as race or gender."  *In re St. Jude Med., Inc.*, 425 F.3d 1116, 1122 (8th Cir. 2005).  Under Rule 23(b)(2), plaintiffs must demonstrate that (1) Wells Fargo "acted or refused to act on grounds that apply generally to the class;" and (2) "that final injunctive relief … is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  Further, courts cannot certify a Rule 23(b)(2) class unless the putative class members' claims and interests are homogenous and cohesive.  *Coleman v. GMAC*, 296 F.3d 443, 447 (6th Cir. 2002); *In re St. Jude Med., Inc.*, 425 F.3d at 1121-22; *Lemon v. Int'l Union of Operating Eng'rs, Local No. 139*, 216 F.3d 577, 580 (7th Cir. 2000).  To meet the homogeneity and cohesion requirements, plaintiffs must establish "that the case will not depend on adjudication of facts particular to any subset of the class nor require a remedy that differentiates materially among class members."  *Lemon*, 216 F.3d at 580; *see In re St. Jude Med.*, 425 F.3d at 1121-22.  Plaintiffs cannot meet the requirements of Rule 23(b)(2) here.

**1.      Plaintiffs' proposed class lacks homogeneity and cohesion due to numerous individualized issues; Wells Fargo has not acted or refused to act on grounds that apply generally to the class.**

Plaintiffs offer no evidence of homogeneity or cohesion among the putative class or of Wells Fargo conduct that is generally applicable to the class.  Rather, plaintiffs merely rely upon the purportedly identical TPP agreement that each class member entered into with Wells Fargo.

24

*See* Pl. Memo. at 14, 18.  Plaintiffs' exclusive reliance on the TPP language, however, is nothing more than an attempt to mask the myriad individual issues that must be determined before any particular borrower could establish an entitlement to a permanent modification, let alone the right to preliminary injunctive relief against foreclosure.  Where, as here, any particular class member's right to relief cannot be adjudicated without an analysis of individual issues, a Rule 23(b)(2) class cannot be certified.  *See Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1036-37, (8th Cir. 2010) (Rule 23(b)(2) certification denied where each member's claim would involve resolution of individual issues); *Heffner v. Blue Cross & Blue Shield of Ala., Inc.*, 443 F.3d 1330, 1340-41, 1344-45 (11th Cir. 2006) (same); *Lemon*, 216 F.3d at 580 (Rule 23(b)(2) certification only appropriate where no adjudication of facts particular to individual class members is necessary).  Indeed, "the claims contemplated in a (b)(2) action are *class* claims, claims resting on the same grounds and applying more or less equally to all members of the class."  *Heffner*, 443 F.3d at 1344 (emphasis in original).  However, the foreclosure on a property is an inherently individualized process, one based on each borrower's particular circumstances.

Here, plaintiffs propose to certify a class consisting of those borrowers who entered into a TPP with Wells Fargo and made the requisite TPP payments, yet who have not received a permanent loan modification or a written denial of HAMP eligibility.  Pl. Memo. at 3.  Plaintiffs have significantly broadened the proposed class definition from that asserted in their Complaint.  Specifically, they eliminated the requirement that class members "have complied with all of their obligations under a written TPP Agreement."  SAC ¶ 139.  Accordingly, the proposed class necessarily consists of borrowers who may not have complied with the other TPP requirements, including the submission of documentation to verify their income, *see* Wells Fargo Decl. Exs. 4, 6, 17, 20, 32, 36, 47, 62 (¶ 1.D, 1.E), which is a prerequisite for a HAMP modification, *see* SD

09-01 at 5-8.  Indeed, the Gracias and Voltaires both failed to submit all of the documentation necessary to support their income; plaintiffs would ask the Court to order that these borrowers be provided permanent HAMP modifications – thus effectively repealing HAMP guidelines issued by the U.S. Treasury.  Plaintiffs' proposed class would also include borrowers who could no longer represent (or who continued to misrepresent) that they were suffering a financial hardship, were in default or imminent danger of default, or that the subject property was their primary residence.  *See* Wells Fargo Decl. Exs. 4, 6, 17, 20, 32, 36, 47, 62 (¶ 1.A, 1.B).  Accordingly, the Court would have to delve into each class member's particular circumstances to determine if they satisfied their TPP obligations.

Moreover, the proposed class does not require that putative class members *actually qualified* for a permanent modification.  Specifically, the proposed class would include borrowers for whom a HAMP qualifying payment (i.e., 31% of monthly income) could not be achieved through the "waterfall" process and who thus did not qualify for a permanent modification, as was the case for Mr. Mestone, Ms. Williams and Mr. Zeppa.  *See* Wells Fargo Decl.  ¶¶ 82, 157, 199.  Even if a particular borrower reached a successful payment amount, that borrower might still be ineligible based on a negative NVP result, as was the case with Ms. Meek and Ms. Williams.  *See id.* ¶ 68, 157.  Plaintiffs, however, completely ignore the reality that many borrowers who were initially eligible for a HAMP trial did not ultimately qualify for a HAMP modification.  Windust Decl. at para. 19.  A variety of circumstances could have led to a subsequent disqualification of an initially eligible loan.  Regardless, these issues must be adjudicated *on an individual basis* before any borrower could be entitled to a HAMP modification.

Last, plaintiffs have not demonstrated how Wells Fargo could have possibly "acted on grounds generally applicable to the class" where the class includes those not entitled to a permanent modification.  As discussed in greater detail in Wells Fargo's contemporaneously-filed opposition to plaintiffs' motion for preliminary injunction, class members must demonstrate a likelihood of success on the merits before they could be entitled to a permanent loan modification.  Here, the proposed class necessarily includes borrowers who do not ultimately qualify for HAMP.  Contrary to plaintiffs' assertions, the offering of a TPP did not indicate that a borrower was eligible for a permanent modification so long as the three trial payments were made.  Accordingly, class members could have been eligible for a TPP but not a permanent modification.  Such circumstances do not demonstrate that Wells Fargo "acted or refused to act" as to the class as a whole, but rather that Wells Fargo's conduct is an individualized response to each borrower's financial circumstances.

> **2.**     **Because the predominant relief sought by plaintiffs is monetary damages, a Rule 23(b)(2) class is improper.**

Rule 23(b)(2) "does not extend to cases in which the appropriate relief relates exclusively or predominantly to money damages."  *Mogel*, 646 F. Supp. 2d at 182-83 (citing Fed. R. Civ. P. 23(b)(2), advisory comm.'s note); *DeRosa*, 694 F. Supp. 2d at 103.  "[M]onetary relief predominates in (b)(2) class actions unless it is incidental to requested injunctive relief," and incidental means "damages that flow directly from liability to the class *as a whole* on the claims forming the basis of the injunctive or declaratory relief."  *DeRosa*, 694 F. Supp. 2d at 104 (citing *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir. 1998) (emphasis in original)); *see Mogel*, 646 F. Supp. 2d at 183 (following *Allison*).  Accordingly, where "plaintiffs seek compensatory and punitive damages which necessarily 'implicate[] the subjective differences of each plaintiff's circumstances," a Rule 23(b)(2) class is impermissible.  *DeRosa*, 694 F. Supp. 2d

at 105; *see Markarian*, 202 F.R.D. at 71 (denying Rule 23(b)(2) class where plaintiff sought damages, attorneys' fees, and Chapter 93A multiple damages).

Here, plaintiffs primarily seek monetary relief.  For example, plaintiffs seek actual, statutory, and multiple damages, as well as attorneys' fees and costs, under Chapter 93A.  *See* SAC, Prayer for Relief ¶¶ (f)-(h); *see also In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. at 400 (finding that where plaintiffs sought damages and fees under Chapter 93A, Rule 23(b)(2) certification was improper).  Further, plaintiffs' Complaint is replete with allegations that necessarily require individual damages determinations, such as that Wells Fargo "prevent[ed] homeowners from pursuing other avenues of resolution, including using the money they are putting toward TPP payments to fund bankruptcy plans, relocation costs, short sales or other means of curing their default."  SAC ¶ 45; *see also id.* ¶¶ 166-67, 174 (alleging "lost opportunity cost of pursuing other means of dealing with their default" and the imposition of "additional fees and charges"), ¶ 178(d), (e) (alleging "increased fees and other costs to avoid or attempt to avoid foreclosure" and "loss of savings in fruitless attempts to secure loan modifications"); *DeRosa*, 694 F. Supp. 2d at 105 (Rule 23(b)(2) impermissible where plaintiffs seek damages implicating their individual circumstances).

Moreover, plaintiffs' request for specific performance of their purported permanent loan modifications is nothing more than a request for monetary relief.  Under HAMP, permanent loan modifications typically provide borrowers with significantly reduced monthly payments and can involve reduced interest rates, extended terms and even forbearance of principal.  *See* SD 09-01 at 1, 8-9.  Such modifications would not only simply be a transfer of monetary benefits from investors to putative class members, but would involve borrower-by-borrower assessments of the appropriate monthly payment, interest rate, and principal forbearance.  Accordingly, regardless

28

of how and when plaintiffs style their request for class certification, a Rule 23(b)(2) class is impermissible due to the predominance of monetary relief. *See Fincher ex rel. Fincher v. Prudential Prop. & Cas. Ins. Co.*, 374 Fed. App'x 833, 847-48 (10th Cir. 2010) (affirming denial of Rule 23(b)(2) class where requested reformation of contract would involve individual damages calculations); *Gawry v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 942, 963 (N.D. Ohio 2009) (rescission or reformation of mortgage loan "is a highly fact-intensive inquiry that diminishes the cohesiveness of [the putative class] beyond that permitted by Rule 23(b)(2)").

## V.    CONCLUSION

For each of the foregoing reasons, defendant Wells Fargo Bank, N.A. respectfully requests that the Court deny plaintiffs' Motion for Provisional Class Certification and award such other relief as the Court deems just and necessary.

Dated:  November 3, 2010

Respectfully submitted,

*/s/ Irene C. Freidel*
Irene C. Freidel (BBO No. 559051)
irene.freidel@klgates.com
David D. Christensen (BBO No. 666401)
david.christensen@klgates.com
Kristin A. Davis (BBO No. 673491)
kristin.davis@klgates.com
**K&L GATES** LLP
State Street Financial Center
One Lincoln Street
Boston, MA  02111
617.951.9154 (phone)
617.261.3175 (fax)

*Counsel for Defendant*
Wells Fargo Bank, N.A.

## Certificate of Service

I, Irene C. Freidel, hereby certify that on November 3, 2010, I electronically filed the

foregoing document with the Clerk of Court using the CM/ECF system which will automatically

send email notification of such filing to the following attorneys of record:

Gary Klein (BBO No. 560769)
Shennan Kavanagh (BBO No. 655174)
Kevin Costello (BBO No. 669100)
RODDY KLEIN & RYAN
727 Atlantic Avenue
Boston, MA 02111-2810

Stuart Rossman (BBO No. 430640)
Charles Delbaum (BBO No. 543225)
NATIONAL CONSUMER LAW CENTER
7 Winthrop Square, 4th Floor
Boston, MA 02110

Michael Raabe (BBO. No. 546107)
NEIGHBORHOOD LEGAL SERVICES
170 Common Street, Suite 300
Lawrence, MA 01840

*/s/ Irene C. Freidel*
Irene C. Freidel

31