**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **WILFREDO and ODALID BOSQUE, VERA VICENTE MEEK, JENNIFER WILLIAMS, JENNIFER RYAN and GARY VOLTAIRE, and PAUL MONTERO, on behalf of themselves and all others similarly situated,**<br><br>     **Plaintiffs,**<br>**vs.**<br><br>**WELLS FARGO BANK, N.A. d/b/a WELLS FARGO HOME MORTGAGE d/b/a AMERICA'S SERVICING COMPANY**,<br><br>     **Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **C.A. NO. 10-10311-FDS** |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR NOTICE RELIEF PURSUANT TO FED. R. CIV. P. 23(d)(1) OR IN THE ALTERNATIVE FOR EXPEDITED DISCOVERY**

Plaintiffs Wilfredo and Odalid Bosque, Vera Vicente Meek, Jennifer Williams, Jennifer Ryan and Gary Voltaire, and Paul Montero, on behalf of themselves and all others similarly situated ("Plaintiffs") hereby move this Court for notice relief pursuant to Fed. R. Civ. P. 23(d). In the alternative, Plaintiffs move for expedited discovery from Defendant Wells Fargo Bank N.A. ("Wells Fargo" or "Defendant") in connection with their motion for preliminary injunction. [Docket No. 29].

## INTRODUCTION

If the Court declines to grant Plaintiffs' motion for preliminary injunctive relief, it should exercise its discretion under Fed. R. Civ. P. 23(d)(1)(B) to order notice to certain putative class

members advising them of the pendency of this action. *See Navarro-Ayala v. Hernandez-Colon*, 951 F.2d 1325, 1336 (1st Cir. 1991) ("[T]he notice contemplated under Rule 23[(d)(1)(B)] is discretionary.")  Attached hereto as Exhibit 1 is a proposed form of notice to be sent to the Massachusetts owner occupants who are putative class members in this matter and who either currently have foreclosure sales scheduled or against whom Wells Fargo commences or recommences foreclosure proceedings.  Plaintiffs are willing to negotiate the specific language of such a notice with Wells Fargo.

In the alternative, Plaintiffs seek expedited discovery in order to address factual issues raised by Wells Fargo in connection with its Opposition to the Motion for Preliminary Injunction together with an evidentiary hearing on such motion.

The purpose of this Motion is to give the Court a full array of options to protect the Massachusetts homeowners who are putative class members in this action from unnecessary foreclosures.

## I.   NOTICE RELIEF UNDER RULE 23(D)(1)(B) IS APPROPRIATE IN THE CIRCUMSTANCES.

Plaintiffs here seek, to the extent possible, to preserve the *status quo pendente lite.*  This protection is warranted not just for the named plaintiffs, but for the putative class of homeowners who stand to lose their properties in violation of contractual rights.  *See* Plaintiffs' Memorandum of Law in Support of Motion for Preliminary Injunction (Docket No. 20).  Because foreclosure is a fast moving non-judicial process under Massachusetts law, a major concern is that class members rights' will be mooted or undermined by foreclosure long before any judicial determination of rights can be made in this matter.  Because foreclosure prevention is the main goal of the Home Affordable Modification Program ("HAMP"), maintenance of the status quo is essential to proper adjudication of this matter.

If notice is ordered here, the Massachusetts owner occupants who are putative class members and who now have a foreclosure sale scheduled by Wells Fargo or against whom foreclosure proceedings are commenced or recommenced during the time period before this litigation is decided on its merits will be made aware that they have legal rights that may affect their decision-making.  It would be a tragedy for a homeowner – unaware of this litigation -- to stand down and lose her home to foreclosure, only to discover later, once this case is decided on its merits, that she had legal rights which she may no longer avail herself of.  *See Barahona-Gomez v. Reno,* 167 F.3d 1228, 1236-37 (9th Cir. 1999) (affirming order that notice be provided under Rule 23(d) in order to prevent the irreparable harm of deportation).[1]  Once the foreclosure is consummated it becomes significantly more difficult for a homeowner to ever regain title to her home.  *Cf. In re Ameriquest Mortgage Lending Company Mortgage Lending Practices Litigation*, MDL No. 1715, 2006 WL 1525661 at *1 (N.D. Ill. May 30, 2006) ("*Ameriquest*") (granting pre-certification classwide notice relief on mortgage rescission claims because "[o]nce a foreclosure sale is completed [] a borrower can no longer cancel the mortgage").

The provision of this notice will be of no detriment to the Defendant whatsoever. Plaintiffs are willing to bear the cost of this notice and Wells Fargo is already obligated to comply with general state law requiring notice prior to foreclosure.  *See, e.g.,* G.L. c. 244, § 14. The goal of the proposed targeted notice is to prevent irreparable injury and further the goals stated by the Obama Administration in its creation of HAMP.

---

[1] By way of comparison, in *Commonwealth v. Fremont Investment & Loan,* 452 Mass. 733 (2008), the Supreme Judicial Court approved a process by which homeowners who had received "presumptively unfair" loans were protected from foreclosure by a notice requirement.  The mandate required the defendant mortgage company to notify the Massachusetts Attorney General prior to foreclosing on any Massachusetts loan that met a particularized set of criteria.  *Id.*, 452 Mass. at 740.  The criteria described homeowners who likely had a right to contest the fairness of their loan under G.L. c. 93A.  *Id.*, 452 Mass. at 739-40.

### 1.    *The Threat of Unnecessary Foreclosures is Real*

Plaintiffs' position, as described in the memoranda supporting their motion for preliminary injunction, is that every homeowner with a TPP is contractually entitled to a proper evaluation of their right to a permanent modification no later than the close of their trial period. Any denial of permanent modification that takes place after that date is in breach of contract.[2] Homeowners who successfully completed their three-month trial periods, but who were subsequently issued denials after the trial period was over should receive notice that they are included in the putative class and may have a right to contest a foreclosure on the basis of their TPP Agreement. Moreover, the threat of foreclosure is not limited to those who have received denials from Wells Fargo .  Even those homeowners who successfully completed their trial periods but have yet to receive a final decision – such as was the case with Paul Montero at the time his foreclosure - remain under threat. *See* Reply Memorandum in Support of Preliminary Injunction at Section II.

Wells Fargo's promises to freeze foreclosures for the named plaintiffs only is beside the point – Plaintiffs' counsel does not know the identities of each of the hundreds of homeowners who will potentially be affected and the crucial outcome of preserving one's home while this case is decided should not rest on the arbitrary factor of whether a homeowner discovered, on their own, the existence of this case.  Without the proposed notice, it is virtually certain that at least some foreclosures in violation of contractual rights will occur among the group of affected Massachusetts homeowners who are unaware of this litigation.

---

[2] There may be other ways in which Wells Fargo breaches the contract as well – such as if Wells Fargo denies a permanent modification for failure timely to provide documents that were actually timely provided by homeowners to Wells Fargo. As reflected in the Complaint in this matter and in the declarations accompanying the Motion for Preliminary Injunction, this is a common occurrence.

## 2.   *The Court Should Provide Notice Relief to Affected Homeowners Pursuant to the Discretion Afforded it Under Fed. R. Civ. P. 23(d)(1)(B)*

The Court has the authority under Fed. R. Civ. P. 23(d)(1)(B) to order notice to putative class members of the pendency of this case.  This is true even if the Court declines to address class certification at this early stage.  Rule 23(d)(1)(B) expressly allows the Court to require notice to protect class members be given at "any step in the action."  Fed. R. Civ. P. 23(d)(1)(B)(i).[3]  The Rule's reference to "class members" is not limited to individuals included in a certified class, as explained by the court in *Puffer v. Allstate Ins. Co.,* 614 F. Supp. 2d 905, 909-11 (N.D. Ill. 2009).  A notice to putative class members that this complaint has been filed and may be a basis to challenge foreclosure would constitute notice of "any step in the action" under the rule.

Further, "[b]ecause of the inherent discretion in the rule, Rule 23(d)(2) notice can precede the class ruling."  3 *Newburg on Class Actions*, § 8.16 (4th ed. 2002 & 2010 Supp.).  Pursuant to this rule, Courts have ordered notice be sent out to putative class members prior to certification, especially where the erosion of rights through the passage of time was at issue.  *See Knight v. Board of Ed. of City of New York,* 48 F.R.D. 108, 112-13 (E.D.N.Y. 1969) (ordering pre-certification notice where "[t]he need for dispatch in this case cannot be questioned."); *Rothman v. Gould*, 52 F.R.D. 494, 499-500 (S.D.N.Y. 1971) (ordering pre-certification notice to putative class members where their legal rights were placed in jeopardy by the actions of named plaintiff and plaintiffs' counsel).  Again, this is particularly true in situations where putative class members stand to lose legal rights without notice.  *See Simer v. Rios,* 661 F.2d 655, 666 (7th Cir.

---

[3] The 1966 Advisory Committee Notes to Rule 23 further clarify that the Court has discretion to order pre-certification notice under Rule 23(d).  In commenting on Rule 23(c)(1), the Advisory Committee notes, "[w]hether the court should require notice to be given to members of the class *of its intention to make a determination* [on class certification], or of the order embodying it, is left to the court's discretion under subdivision (d)(2)." (emphasis added).

1981) (noting that, in order to protect putative class members in appropriate pre-certification settlement circumstances, a district court, "in its discretion and by acting pursuant to Rule 23(d) as well as its general equity power, may order notice.") *See also Sorrentino v. ASN Roosevelt Center LLC,* 584 F. Supp. 2d 529, 532 (E.D.N.Y. 2008) (approving pre-certification communications to putative class members).

The granting of pre-certification notice to putative class members who stand to lose their homes to foreclosure during the pendency of litigation against their mortgage companies has some direct precedent.  In *Ameriquest*, the Court did exactly that – choosing to evaluate Plaintiffs' request under an injunction standard.  The thrust of the Court's opinion, however reached, was that it was important -- before class certification -- to protect against unnecessary foreclosures during the pendency of the litigation.  *Ameriquest*, 2006 WL 1525661 at *6 ("While we appreciate the costs that [Defendant] would shoulder in issuing notices and investigating rescission requests (the merits of which remain to be seen), its burden cannot compare to the hardship that would be suffered by class members who may lose their homes and rescission rights despite the existence of a complete defense . . . .")  That same concern is present here – and can serve as a path toward preventing unnecessary foreclosures.

### 3. *Notice is Not Administratively Burdensome*

In this case, it would not be administratively burdensome to identify notice recipients. Wells Fargo can easily identify its Massachusetts borrowers who have received TPP Agreements but are nevertheless scheduled for a foreclosure sale (or who are at the point of entering or reentering the foreclosure process).  Further, as a participating servicer in HAMP, Wells Fargo is required to make to Fannie Mae, under the direction of the Treasury Department, loan-level data reports to Fannie Mae concerning their loans in the HAMP process.  *See* Supp. Directive

("S.D.") 09-01 at 19-21, Exs. A-D.  *See also* S.D. 09-06, 09-08, Conversion FAQ 1208-05.[4]

Included in this required data reporting is the date on which a Trial Period Plan Agreement is

executed by the borrower, the length of the trial period, and the date on which the trial period

begins.  *See* S.D. 09-01 at 28, 35.  Also included is the requirement that participating servicers

record and report the reason for which a borrower was denied.  *Id.* at 14 ("Records must also be

retained to document the reason(s) for a trial modification failure."); S.D. 09-06 at 14-15.[5]

     Further, under HAMP rules, participating servicers are required to send out notices to

homeowners who have been determined ineligible for a HAMP modification after a trial period

has been completed.  *See* S.D. 09-08 at 1-4.  In other words, Wells Fargo is already required to

identify these homeowners to Fannie Mae – there is little additional burden to identify them for

present purposes.

     Wells Fargo is not only obligated to track affected homeowners under HAMP, but it is

also required, on behalf of the mortgagee, to provide notice of its intent to foreclose and related

details under G.L. c. 244, § 14 and attendant statutory provisions.  Whereas this preexisting

obligation illustrates the ease with which the relief notice sought here could be executed, it does

not suggest that general foreclosure notice is sufficient to inform affected homeowners of their

rights.  "A general notice of foreclosure is markedly different from a court-ordered notice that

federal rights may shield a homeowner from foreclosure. . . ."  *Ameriquest,* 2006 WL 1525661 at

*5.  Whereas general notice simply notifies the homeowner of the existence of the foreclosure,

---

[4] All HAMP Program Guidance is available on the Internet at
https://www.hmpadmin.com/portal/programs/guidance.jsp
[5] S.D. 09-06 contains the requirement that upon the issuance of a denial, participating servicers
report the reasons that a trial period did not result in a HAMP modification.  By running a
database comparison of the trial period dates against the date on which particular homeowners
were reported as failing, Wells Fargo can determine which denials were issued after the
contractual trial period ended without resort to file-by-file review.

specific notice regarding this litigation may allow homeowners to avoid foreclosure. "Armed with this specific information, borrowers may take steps to prevent foreclosure they otherwise would not." *Id.*

Because of both federal and state requirements to which Wells Fargo is already subject, the administrative burden in identifying affected Massachusetts homeowners is *de minimis*. Where Plaintiffs have offered to bear the cost of this additional notice, there is no reason not to grant the relief sought.

### 4.      *Absent Notice Relief, Irreparable Injury Will Occur*

The targeted notice relief sought by Plaintiffs here accomplishes two purposes. First, it notifies affected Massachusetts homeowners that they may have legal rights that are being adjudicated in this matter. Second, it will encourage these individuals to seek legal representation to evaluate these legal rights. The notice seeks to avoid the irreparable injury that occurs when the unique asset of a home is lost. "As a general rule, interference with the enjoyment or possession of land is considered 'irreparable' since land is viewed as a unique commodity for which monetary compensation is an inadequate substitute." *Shammas v. Merchants Nat'l Bank*, No. Civ. A. 90-12217N, 1990 WL 354452 at *14 (D. Mass. Nov. 9, 1990), *citing Pelfresne v. Williams Bay*, 865 F.2d 877, 883 (7th Cir. 1989)). *See also United Church of Medical Center v. Medical Center Com.*, 689 F.2d 693, 701 (7th Cir. 1982) ("It is settled beyond the need for citation…that a given piece of property is considered to be unique, and its loss is always an irreparable injury."). If Massachusetts owner-occupants lose their homes at foreclosure auction to a third party bidder, there would be nothing that the Court could do later to fully compensate them for the injury they suffered by loss of their unique properties.

Further, it bears noting that the goal of foreclosure avoidance is fully consistent with the public policy aims embodied in the Obama Administration's creation of HAMP. *See* Memorandum in Support of Preliminary Injunction [Docket No. 30] at 19-20. Targeting notice relief to those Massachusetts owner-occupants against whom Wells Fargo is either commencing or recommencing foreclosure is thus fully consistent with the Administration's stated goals.

## II.   THE COURT SHOULD ALLOW PLAINTIFFS TO CONDUCT LIMITED EXPEDITED DISCOVERY RELATED TO THEIR REQUEST FOR PRELIMINARY INJUNCTION

In the alternative, if the Court is uncertain whether Plaintiffs have met their burden to show that they and similarly-situated homeowners are entitled to preliminary injunctive relief, the Court should allow Plaintiffs to conduct limited expedited discovery to obtain evidence to support their request before it holds a hearing on their motion.

The Federal Rules of Civil Procedure allow Courts to modify discovery deadlines in special circumstances. A party seeking preliminary injunctive relief is such a circumstance, as expressly identified in the Advisory Committee Notes to the 1993 amendments to Rule 26(d) ("[d]iscovery before the Rule 26(f) conference "will be appropriate in some cases, such as those involving requests for a preliminary injunction..."). Fed. R. Civ. P. 26(b)(1) provides the court with broad discretion in structuring discovery, explaining "for good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." [6] *See also*, *Mann v.*

---

[6] A specific standard for evaluating expedited discovery requests is not set out in the Federal Rules of Civil Procedure. It does not appear that the First Circuit or the District of Massachusetts have a clearly established standard. A decision arising out of the Eastern District of North Carolina has discussed the various expedited discovery standards adopted by district courts. *Dimension Data North America, Inc. v. Netstar-1, Inc.* 226 F.R.D. 528 (E.D.N.C. 2005). The *Dimension Data* Court identified two predominant standards in use: one applying modified preliminary injunction factors and another based on reasonableness. *Id.* at 531. The court in *Dimension Data* noted that the more stringent standard applying modified preliminary injunction factors has been criticized by courts, particularly where expedited discovery is sought in order to

*Doe*, 460 F. Supp. 2d 259, 265 (D. Mass. 2006) (noting that, "...the bar on pre-conference

discovery may be lifted by court order.").

Numerous courts, including those in this District, have exercised such discretion. *In re*

*Websecure, Inc. Securities Litigation*, Civ. A. No. 97-10662-GAO, 1997 WL 770414, at *4 (D.

Mass. Nov. 26, 1997) (finding the plaintiffs' "necessary" and "particularized" expedited

discovery request to be reasonable where "the viability of [Defendant] as an operating business is

an important factor in determining whether, or when, injunctive relief might be appropriate...");

*In re First Commodity Corp. of Boston Customer Accounts Litigation,* 119 F.R.D. 301, 303 (D.

Mass. 1987) (noting a prior order in the case granting expedited discovery so "prompt hearings

on the motion[] for [preliminary injunctive] relief could be commenced."); *Ellsworth Associates,*

*Inc. v. United States* 917 F. Supp. 841, 844 (D.D.C. 1996) (commenting that "[e]xpedited

discovery is particularly appropriate when a plaintiff seeks injunctive relief because of the

---

prepare for a preliminary injunction hearing. *Id.* The court ultimately adopted the reasonableness standard where parties request expedited discovery in relation to a preliminary injunction request. *Id. See also, Merrill Lynch, Pierce, Fenner & Smith v. O'Connor*, 194 F.R.D. 618, 623-24 (N.D. Ill. 2000) (noting "where, ... a plaintiff seeks expedited discovery in order to prepare for a preliminary injunction hearing, it does not make sense to use preliminary injunction analysis factors to determine the propriety of an expedited discovery request."); *Entm't Tech. Corp. v. Walt Disney Imagineering,* No. 03-3546, 2003 WL 22519440, at *3 (E.D. Pa. 2003). Plaintiffs submit that the reasonableness test is appropriate here because they are seeking expedited discovery to prepare for their preliminary injunction hearing. Even if the Court were to adopt the "modified preliminary injunction factors" standard, Plaintiffs have satisfied it. There is clearly a connection between the expedited discovery they seek and the avoidance of irreparable harm because discovery relating to Wells Fargo's foreclosure policies for HAMP borrowers will allow Plaintiffs and the Court to evaluate whether a preliminary injunction is warranted. The injury Plaintiffs and homeowners like them would suffer is significantly greater than the burden on Defendants to provide the limited discovery they seek because the discovery is necessary to Plaintiffs to present their arguments at the preliminary injunction hearing. *See, Lindsey & Osborne Partnership, L.P. v. Day & Zimmermann, Inc.*, No. 08-cv-2301-CM-DJW, 2008 WL 2858786, at *2-3 (D. Kan. July 22, 2008) (allowing plaintiff's motion for expedited discovery where the discovery was relevant and limited to preliminary injunction and necessary for plaintiff to prepare for the hearing, and would place a relatively minimal burden on the Defendant when compared with the harm to plaintiff in denying it.).

expedited nature of injunctive proceedings." (citation omitted)); *Edudata Corp. v. Scientific Computers, Inc.*, 599 F. Supp. 1084, 1088 (D. Minn.1984), *aff'd in part, rev'd in part on other grounds*, 746 F.2d 429 (8th Cir.1985) (ordering expedited discovery where it would "better enable the court to judge the parties' interests and respective chances for success on the merits" at a preliminary injunction hearing); *Dan River, Inc. v. Unitex Ltd.*, 624 F.2d 1216, 1220 (4th Cir. 1980) (stating that the district court "set a hearing on the motion for a preliminary injunction and directed the parties to engage in discovery on an expedited basis prior to that hearing.").

Plaintiffs propose taking a deposition of Wells Fargo's fact witness, Ben Windust, whose declaration Wells Fargo submitted in support of its Opposition. Among other things, Mr. Windust attests to facts relating to (1) Wells Fargo's policies regarding foreclosure proceedings on borrowers in the HAMP, (Windust Decl., ¶¶ 26, 41-45), (2) the manner in which Wells Fargo determines whether a borrower is eligible for a HAMP modification, (Windust Decl., ¶¶ 14-17, 44), (3) the number and identities of borrowers who received TPP Agreements and who are awaiting HAMP eligibility determinations, (Windust Decl., ¶¶ 32-38) Plaintiffs also propose obtaining a limited number of policy documents from Wells Fargo identified in and that served as a basis for the facts set forth in Mr. Windust's declaration. This discovery is narrowly tailored to address the factual disputes underlying Plaintiffs' preliminary injunction motion.

This information is also clearly relevant to Plaintiffs' motion for preliminary injunctive relief and therefore appropriately discoverable on an expedited basis. In particular, Mr. Windust's testimony will inform the Plaintiffs and the Court about the following issues:

- Whether Plaintiffs have standing to pursue the motion for preliminary injunctive relief due to an imminent threat of harm;

- Whether Plaintiffs and borrowers like them are being subject to foreclosure proceedings because of Wells Fargo's failure to properly implement the HAMP;

- Whether Plaintiffs and borrowers like them will suffer irreparable harm because they will lose their homes when they have viable legal rights to avoid foreclosure; and

- Whether and the extent to which Wells Fargo's current procedures are adequate to protect homeowners who are in the factual circumstances described in the Complaint.

Limited discovery relevant to Plaintiffs' preliminary injunction motion will allow the Court to make an informed decision about the appropriate form and scope of injunctive relief.

## III.    CONCLUSION

For the reasons set out herein and in the Plaintiffs' two memoranda supporting their Motion for Preliminary Injunction, the relief requested in this motion should be granted in whole or in part.  Whatever the form deemed appropriate by the Court, Massachusetts owner-occupants who have important legal rights at stake in this matter should not lose their home prior to the adjudication of those rights.

Dated: December 6, 2010

Respectfully Submitted,
On behalf of Plaintiffs,

By their attorneys,

*/s/ Gary Klein*
Gary Klein (BBO 560769)
Shennan Kavanagh (BBO 655174)
Kevin Costello (BBO 669100)
RODDY KLEIN & RYAN
727 Atlantic Avenue
Boston, MA  02111-2810
Tel:  (617) 357-5500
Fax:  (617) 357-5030

Stuart Rossman (BBO 430640)
Charles Delbaum (BBO 543225)
NATIONAL CONSUMER LAW CENTER
7 Winthrop Square, 4th floor

Boston, MA 02110
Tel: (617) 542-8010
Fax: (617) 542-8028

Michael Raabe (BBO 546107)
NEIGHBORHOOD LEGAL SERVICES
170 Common Street, Suite 300
Lawrence, MA 01840
Tel:  (978) 686-6900
Fax:  (978) 685-2933

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic File (NEF) and paper copies will be sent to those indicated as non-registered participants on December 6, 2010.

*/s/ Gary Klein*
Gary Klein