IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WILFREDO and ODALID BOSQUE, VERA VICENTE MEEK, and JENNIFER WILLIAMS, on behalf of themselves and all others similarly situated<br><br>     Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A. d/b/a WELLS FARGO HOME MORTGAGE d/b/a AMERICA'S SERVICING COMPANY,<br><br>     Defendant. | C.A. NO. 10-10311-FDS |

**WELLS FARGO BANK, N.A.'S MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR NOTICE RELIEF PURSUANT TO
FED. R. CIV. P. 23(d)(1) OR, IN THE ALTERNATIVE, FOR EXPEDITED DISCOVERY**

Irene C. Freidel
BBO No. 559051
David D. Christensen
BBO No. 666401
Kristin A. Davis
BBO No. 673491
**K&L GATES LLP**
State Street Financial Center
One Lincoln Street
Boston, MA  02111

Counsel for Wells Fargo Bank, N.A.

December 20, 2010

Defendant Wells Fargo Bank, N.A. ("Wells Fargo") respectfully submits the following memorandum in opposition to plaintiffs' Motion for Notice Relief Pursuant to Fed. R. Civ. P. 23(d)(1) or, in the Alternative, for Expedited Discovery. For the reasons stated below, plaintiffs' Motion should be denied.

Plaintiffs filed their original complaint in this action on February 23, 2010. They did not move for a preliminary injunction until September 15, 2010. Now, after the parties have fully briefed Wells Fargo's Motion to Dismiss, Plaintiffs' Motion for Preliminary Injunction, and Plaintiffs' Motion for Provisional Class Certification, plaintiffs ask the Court for expedited discovery and for notice to be sent to the putative class pursuant to Rule 23(d)(1)(B), even if the Court determines that no class can be certified. (If the Court grants Wells Fargo's Motion to Dismiss, this Motion would become moot.)

Plaintiffs' Motion presumes that each borrower who was denied a HAMP modification more than three months after the beginning of their trial plan was contractually entitled to a permanent modification. The reasons why a borrower may have been denied for HAMP are numerous and include the borrower not being able to afford a modified loan, the borrower not providing information to Wells Fargo necessary to establish HAMP eligibility, or for example, the investor not agreeing to a modification where the NPV test is negative. Despite these various reasons, plaintiffs would notify each borrower whose loan has been referred to foreclosure that they may come into this Court and challenge their HAMP denial.

Plaintiffs' novel request should be denied as a matter of law.

I.  **PLAINTIFFS' REQUEST FOR NOTICE IS AN IMPERMISSIBLE END-RUN AROUND RULE 23 AND PRELIMINARY INJUNCTION STANDARDS; THE NOTICE IS OVERBROAD.**

Plaintiffs' request to notify the putative class of their purported rights vis-à-vis this action is nothing more than an attempt to get around class certification, and the requirements for a preliminary injunction in the event plaintiffs' Motions for Provisional Class Certification and/or Preliminary Injunction are denied by the Court. Plaintiffs' request should be denied for numerous reasons.

   A.  **Rule 23(d) Does Not Authorize Notice If Class Certification Is Denied.**

If the Court determines that class certification is appropriate and grants plaintiffs' Motion for Provisional Certification, members of the class would then be entitled to notice that they are member of the class. Plaintiffs request the Court order notice, however, if it determines that class certification is *not* appropriate. Under those circumstances, notice under Rule 23(d)(1)(B) is not authorized, because this case would no longer be proceeding as a putative class action. Wells Fargo is aware of no cases where courts order notice to a putative class *after* deciding that the proposed class does not satisfy Rule 23. Moreover, prior to the certification of a class, notice to putative class members is inappropriate. *See Farmers Coop. Co. v. United States*, 90 Fed. Cl. 72, 73 (2009) ("Application of [Rule 23(d)] always follows class certification and, thus, is premised upon the existence of class members to protect;" denying Rule 23(d)(1) motion to notify class prior to class certification).

   B.  **The Motion Erroneously Presumes That Any Borrower Who Did Not Receive A Denial Within Three Months Of Their Trial Plan Is Entitled To A Permanent Modification, Regardless Of The Reason(s) They Were Denied.**

Plaintiffs' Motion presumes that any borrower that was in a HAMP trial plan, but did not receive a denial from HAMP until more than three months after the trial plan started, has "legal

rights" to challenge the denial. According to plaintiffs, if Wells Fargo took longer than three months to notify a borrower that he or she had been denied for a HAMP permanent modification – for whatever reason – Wells Fargo has waived its right to issue the denial, and *the investor* becomes contractually obligated to provide the borrower with a permanent HAMP modification. This theory, for reasons stated in Wells Fargo's Motion to Dismiss, is contradicted by HAMP guidance and the policy of the U.S. Treasury, the agency charged with administering HAMP.[1]

The Motion, and plaintiffs' entire case, in fact, is predicated on fundamental misunderstandings of HAMP, namely that (1) by offering borrowers a trial period plan ("TPP"), Wells Fargo necessarily determined them eligible for a permanent HAMP modification, and thus, upon receipt of a TPP, were not required to submit further information; and (2) that servicers such as Wells Fargo have a contractual duty to provide a final HAMP decision "no later than the close of their trial period" (the so-called "Modification Effective Date"), and that the failure to do so entitles a borrower to a permanent loan modification. Plaintiffs' theories would completely undermine HAMP by providing loan modifications to borrowers who do not follow the program's guidelines or who cannot afford a modified loan. However, plaintiffs have submitted no evidence and pointed to no authority demonstrating that Wells Fargo made any such determination.

To the contrary, prior to June 1, 2010, HAMP guidelines expressly permitted a servicer to place a borrower into a TPP prior to making a final determination as to whether the borrower was eligible for a permanent loan modification. *See* SD 09-01 at 15, 17; SD 10-01 at 1 ("Supplemental Directive 09-01 gave servicers the option of placing a borrower into a trial

---

[1]   Wells Fargo incorporates herein by reference the arguments sent forth in its memoranda in opposition to plaintiffs' motions for preliminary injunction and provisional class certification. *See* Docket Nos. 40, 41. There is no basis for either motion.

period plan based on verbal financial information … subject to later verification during the trial period."). And, through its monthly Servicer Performance Report, the U.S. Treasury has publicly tracked the number of borrowers who have been on "aged" trial plans (more than six months old). The U.S. Treasury may be surprised to learn that each of these borrowers on "aged" trial plans is entitled to a permanent modification even if they do not qualify for one under the U.S. Treasury's own HAMP guidance.

Plaintiffs' citation to *In re Ameriquest Mortgage Lending Co. Mortgage Lending Practices Litigation*, 2006 WL 1525661 (N.D. Ill. May 30, 2006), is unhelpful to their argument. In *Ameriquest*, the named plaintiffs actually satisfied the requirements for a preliminary injunction and the court subsequently ordered notice to the class. *Id.* at *7. Here, plaintiffs are requesting notice only in the event that the Court denies their motion for preliminary injunction. Pl. Memo. at 1-2. Plaintiffs have it backwards and the Court should deny their motion.

### C. Not All Foreclosures Are Avoidable.

HAMP was designed to prevent *avoidable* foreclosures. Unfortunately, not all foreclosures are avoidable and HAMP was not intended to act as a foreclosure moratorium. Ultimately, the premise of plaintiffs' Motion is that all foreclosures should be stopped, regardless of whether a borrower qualifies for a HAMP modification. But there is a general consensus that staying unavoidable foreclosures will prolong the foreclosure crisis. Providing notice to individuals facing foreclosure proceedings who have been denied a HAMP permanent modification will not be productive.

As stated above, individuals receiving plaintiffs' proposed notice would include those who do not qualify for a HAMP modification and those whose loans have already been thoroughly reviewed (and peer reviewed) by Wells Fargo for loss mitigation alternatives. The Court, and this action, will become bogged down with borrowers who will be engaged in a

fruitless attempt to challenge Wells Fargo's determination that they do not qualify for a permanent modification, even though they have no private right of action to do so. *See, e.g.*, *Shurtliff v. Wells Fargo Bank, N.A.*, 2010 WL 4609307, at *3-4 (D. Utah Nov. 5, 2010) (dismissing breach of contract based on TPP because no private right of action under HAMP); *Aleem v. Bank of Am., N.A.*, 2010 WL 532330, at *3-4 (C.D. Cal. Feb. 9, 2010) ("[state consumer protection statute] cannot create a private right of action where none exists under the federal statute"). The Court will then be faced with an action involving a number of borrowers each challenging their HAMP denial for different reasons; in the meantime, the foreclosure process will be delayed and unavoidable foreclosures will be stayed even though their occurrence is inevitable.

> D. **Plaintiffs' Proposed Notice Is Overbroad.**

Plaintiffs' proposed notice is overbroad. Not only would the notice go to borrowers who were denied for HAMP because they could not afford a modified loan, it would also go to borrowers who are still under consideration for HAMP. HAMP expressly permits servicers to place borrowers on a "dual-track," that is, borrowers may be evaluated for a HAMP modification while their foreclosure action proceeds, and, indeed, certain investors *require* that borrowers be placed on a "dual-track." However, both HAMP and Wells Fargo policy will not permit a foreclosure sale while a borrower is still under evaluation for HAMP. HAMP SD 09-01 at 14 (Dckt. No. 26-2); Windust Decl. ¶ 26 (Dckt. No. 43).

In addition, plaintiffs' proposed group of individuals to receive notice would also include borrowers who have obtained (or have been offered) permanent modifications outside of the HAMP program (such as Mr. Mestone and Mr. Zeppa) or borrowers who will obtain permanent HAMP modifications (such as the Bosques) and thus are in no imminent risk of losing their homes. Moreover, to the extent that borrowers who received permanent modifications

subsequently default on their modified loans, the proposed notice would interfere with Wells Fargo's contractual rights, under the note and mortgage, to institute foreclosure proceedings.

In *Durmic v. J.P. Morgan Chase Bank, N.A.*, 2010 WL 4825632 (D. Mass. Nov. 24, 2010), Judge Stearns held that the proposed class definition (which is identical to the one proposed here) was overbroad because it included borrowers who do not qualify for a permanent HAMP modification, could not afford one, or obtained an alternative modification. *Id.* at *7. Here, the proposed notice class is also overbroad in that it will include borrowers who fail to make post-TPP payments while waiting for a final HAMP decision, and thus are not entitled to equitable relief because of "unclean hands." *See Durmic*, 2010 WL 4825632, at *7 (plaintiff not entitled to injunctive relief for failure to make payments).[2]

Allowing plaintiffs to send notice of this action to borrowers who are not entitled to permanent modifications pursuant to HAMP guidelines would create further false expectations as to whether that borrower may be able to obtain a modification and avoid foreclosure. Moreover, any borrower facing foreclosure, however, already has significant incentive to protect their legal interests without receiving notice of this action.

Wells Fargo ultimately forecloses on a very small percentage of borrowers, and only does so when the borrower is substantially in default and Wells Fargo has thoroughly reviewed the borrower for each loss mitigation alternative available and the loan has been subject to peer review. Accordingly, by the time the borrower reaches a foreclosure sale, their loan has been exhaustively reviewed and a determination of non-eligibility for a HAMP modification has been made. At that point, their claim can only be that they are entitled to a HAMP modification even

---

[2]   Plaintiffs even admit that some borrowers in the proposed class have failed to continue to make payments on their loans after the initial three month trial period. *See* Pl. Prelim. Inj. Memo. at 18 ("*Many* borrowers are also continuing to make payments even though they have completed their TPP Agreements.") (emphasis added) (Dckt. No. 30).

though they did not qualify for one. That position, however, is not legally-viable, and would only result in delaying the inevitable.

### E.     Plaintiffs' Proposed Notice Would Upend the Status Quo.

Plaintiffs argue that notice to individuals who were denied a HAMP modification is necessary to maintain the *status quo*. The opposite is true. Notice to the "class" would unnecessarily interfere with the foreclosure process and notify borrowers of rights that they do not have. It would cause borrowers to file lawsuits to obtain permanent modifications that they are not entitled to, which would (contrary to plaintiffs' argument) be detrimental to Wells Fargo. The result would be delay on the completion of unavoidable foreclosures. For each of these reasons, notice is not warranted.

In the event that the Court permits plaintiffs to notify putative class members of this action, Wells Fargo requests the opportunity to submit an alternative form of notice or at least offer edits to plaintiffs' form. For example, while plaintiffs' Motion suggests that notice would be sent to those borrowers with a scheduled foreclosure sale and those against whom Wells Fargo thereafter commences (or recommences) foreclosure proceedings, the proposed notice suggests that it is going to a broader group, *i.e.*, borrowers whose loans are "about to enter the foreclosure process." Moreover, at a minimum, the notice should be amended to reflect that receipt of the notice does not affect the borrower's obligations under the note and mortgage, including making monthly payments.[3]

---

[3]     As stated in the Windust Declaration, Wells Fargo disputes that sending notice to borrowers would be "administratively feasible."

## II.   PLAINTIFFS' ALTERNATIVE MOTION FOR EXPEDITED DISCOVERY IS PREMATURE AND SHOULD BE DENIED.

Plaintiffs are seeking expedited discovery apparently for the purpose of deposing Ben Windust, Senior Vice President, Servicing/Default Operations, Wells Fargo Bank, N.A. Plaintiffs, however, did not seek to depose Mr. Windust prior to the Court's hearing and ruling on their Motions for Preliminary Injunction and Provisional Class Certification and, thus, the deposition is not necessary for that purpose. More important, discovery is premature in that Wells Fargo's Motion to Dismiss is still pending, and the parties have not conferred pursuant to Rule 26(f).

First, the requested discovery is highly premature, particularly in light of Wells Fargo's pending Motion to Dismiss before the Court. Courts in this district have agreed with the principle that "it is appropriate to defer discovery until preliminary questions that may dispose of the case are determined." *Kleinerman v. U.S. Postal Serv.*, 100 F.R.D. 66, 68 (D. Mass. 1983). Such a deferral is appropriate here because, unlike the defendants in *Kleinerman* who never even submitted a memorandum supporting his motion to dismiss, Wells Fargo has supported its Motion to Dismiss the Amended Complaint with a thorough memorandum, and declaration with exhibits. *See also MacKnight v. Leonard Morse Hosp.*, 828 F.2d 48, 52 (1st Cir. 1987) (affirming stay of discovery pending resolution of motion to dismiss); *Acevedo-Villalobos v. Hernandez*, 22 F.3d 384, 386 (1st Cir. 1994) (discussing same); *Moore v. Williams Coll.*, 702 F. Supp. 2d 19, 22 (D. Mass. 2010) (same); *Landy v. D'Alessandro*, 316 F. Supp. 2d 49, 55 (D. Mass. 2004) (same); *Sebago, Inc. v. Beazer East, Inc.*, 18 F. Supp. 2d 70, 78 (D. Mass. 1998) (same); *LTX Corp. v. Daewoo Corp.*, 979 F. Supp. 51, 54 (D. Mass. 1997) (same); *J.J. Reidy & Co., v. Airwater Corp.*, 2005 WL 3728726, at *9 (D. Mass. Sept. 27, 2005) (Saylor, J.) (same).

Second, in addition to the pendency of Wells Fargo's Motion to Dismiss, the parties also have not conferred pursuant to Rule 26(f). In general, a party "may not seek discovery from any source" until the parties have conferred pursuant to Rule 26(f). Fed. R. Civ. P. 26(d)(1). While the bar on pre-conference discovery may be lifted by court order, "only the most compelling reasons are sufficient to justify a departure from the rule." *Ortiz-Rivera v. Mun. Gov't of Toa Alta*, 214 F.R.D. 51, 54 (D.P.R. Mar. 19, 2003) (dismissing plaintiffs' claims with prejudice because plaintiffs "failed to recognize and heed the rules, regulations and Court orders that establish the discovery process for practice in the federal court system") (citing 8 Charles Alan Wright & Arthur R. Miller, *Fed. Practice and Procedure* § 2045 (2d ed. 1994)).

Indeed, courts in this district have required a showing of good cause to justify such an order. *See Arista Records LLC v. Does 1-27*, 584 F. Supp. 2d 240, 259 (D. Me. 2008) (denying motion for pre-conference discovery because movants "failed to demonstrate there is good cause"); *McMann v. Doe*, 460 F. Supp. 2d 259, 265 (D. Mass. 2006); 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Fed. Pract. and Proc. § 2046.1, at 288 (3d ed. 2010) ("it is implicit that some showing of good cause should be made to justify [order for pre-conference discovery]").

In determining whether good cause to allow a pre-conference discovery exists, courts have applied criteria similar to those required to grant a motion for preliminary injunction. *See McMann*, 460 F. Supp. 2d at 265. These factors include: (1) the purpose for the discovery; (2) the ability of the discovery to preclude demonstrated irreparable harm; (3) the plaintiff's likelihood of success on the merits; (4) the burden of discovery on the defendant; and (5) the degree of prematurity. *Id*; *see also Arista*, 584 F. Supp. 2d at 258-59. Application of these factors to this case does not support a finding of good cause for expedited discovery.

At the outset, there seems to be no real practical purpose for the requested discovery. Unlike the plaintiff in *McMann*, who required discovery to even determine the identity of the defendant, plaintiffs here have been able to fully brief the court—in their Motions for Preliminary Injunction and Class Certification and in their opposition to Wells Fargo's Motion to Dismiss—on the very issues it claims will be informed by the requested discovery. *McMann*, 460 F. Supp. 2d at 265. Because the issues have been fully briefed, the requested discovery would serve no real purpose at this stage in the litigation.

Moreover, plaintiffs have failed to show any irreparable harm, let alone irreparable harm that could be prevented by expedited discovery. "Irreparable harm most often exists where a party has no adequate remedy at law," *Arista*, 584 F. Supp. 2d at 259, and "must be grounded on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store." *Charlesbank Equity Fund II, Ltd. P'ship v. Blinds To Go, Inc.*, 370 F.3d 151, 162 (1st Cir. 2004). Plaintiffs in this case have an adequate remedy—indeed, they are pursuing them in this action. *See* Second Amended Complaint, Dckt. No. 26. Moreover, even assuming that such irreparable harm existed, plaintiffs have not offered any indication of how deposing Mr. Windust would prevent such harm. Wells Fargo has thoroughly demonstrated in its Memorandum in Opposition to Plaintiffs' Motion For Preliminary Injunction, that plaintiffs cannot establish a likelihood of success on the merits. *See* Dckt. No. 41. Finally, allowing this discovery would impose a burden of time and expense on Wells Fargo that is not justified considering the current posture of this litigation.

For these reasons, plaintiffs have not shown that good cause supports the requested expedited discovery. To the extent that the Court allows plaintiffs to engage in discovery, Wells

Fargo similarly requests the right to take the depositions of Mr. Wyatt and each of the named plaintiffs, as well as each borrower who has submitted a declaration in this action.[4]

**III.   CONCLUSION**

For each of the foregoing reasons, defendant Wells Fargo Bank, N.A. respectfully requests that the Court deny plaintiffs' Motion for Notice Relief Pursuant to Fed. R. Civ. P. 23(d)(1) or, in the Alternative, for Expedited Discovery.

Dated:  December 20, 2010              Respectfully submitted,

/s/ Irene C. Freidel
Irene C. Freidel (BBO No. 559051)
irene.freidel@klgates.com
David D. Christensen (BBO No. 666401)
david.christensen@klgates.com
Kristin A. Davis (BBO No. 673491)
kristin.davis@klgates.com
**K&L GATES LLP**
State Street Financial Center
One Lincoln Street
Boston, MA  02111

Counsel for Wells Fargo Bank, N.A.

---

[4]   Moreover, the topics that plaintiffs propose to cover with Mr. Windust are legal issues that do not require fact discovery.  *See* Pl. Memo. at 11-12.

**Certificate of Service**

I, Irene C. Freidel, hereby certify that on December 20, 2010, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Gary Klein (BBO No. 560769)
Shennan Kavanagh (BBO No. 655174)
Kevin Costello (BBO No. 669100)
RODDY KLEIN & RYAN
727 Atlantic Avenue
Boston, MA 02111-2810

Stuart Rossman (BBO No. 430640)
Charles Delbaum (BBO No. 543225)
NATIONAL CONSUMER LAW CENTER
7 Winthrop Square, 4th Floor
Boston, MA 02110

Michael Raabe (BBO. No. 546107)
NEIGHBORHOOD LEGAL SERVICES
170 Common Street, Suite 300
Lawrence, MA 01840

                                          */s/ Irene C. Freidel*
                                          Irene C. Freidel