# EXHIBIT A

Slip Copy, 2010 WL 5148473 (D.Or.)
**(Cite as: 2010 WL 5148473 (D.Or.))**

Only the Westlaw citation is currently available.

United States District Court, D. Oregon.
Anita A. VIDA, Plaintiff,
v.
ONEWEST BANK, F.S.B., a Delaware corporation
formerly known as IndyMac Federal Bank, F.S.B.,
and Federal National Mortgage Association, a Gov-
ernment Chartered Association formerly known as
Fannie Mae, Defendants.
**Civ. No. 10-987-AC.**

Dec. 13, 2010.

David P. Smith, The Smith Firm, PC, West Linn, OR,
for Plaintiff.

Danielle J. Hunsaker, William L. Larkins, Jr., Larkins
Vacura LLP, Portland, OR, for Defendants.

OPINION AND ORDER

ACOSTA, United States Magistrate Judge:

*Introduction*

**\*1** Plaintiff Anita A. Vida ("Vida") alleges claims for
breach of contract and fraud, and seeks declaratory
judgment cancelling the trust deed and reinstating her
mortgage. Defendants OneWest Bank, FSB ("OneW-
est") and Federal National Mortgage Association
("FNMA") (collectively "Defendants") move for
dismissal of all claims. Defendants argue that Vida
has failed to state a claim for relief on the following
grounds: (1) Vida may not state a breach of contract
claim arising under the Home Affordable Mortgage
Program ("HAMP") because it does not authorize a
private right of action; (2) Vida has not pleaded her
fraud claim with sufficient particularity; and (3)
Vida's allegation that she did not receive adequate
notice of the foreclosure action is preempted by state
law. Defendants assert generally that Vida has other-
wise failed to state claims of breach of contract and
fraud.

*Allegations*

Vida has named both OneWest and FNMA as defen-
dants in this action. The breach of contract claim al-
leges that OneWest offered loan modification, Vida
accepted the offer, performed all required conditions,
and gave consideration, after which OneWest
breached its agreement with her and initiated foreclo-
sure contrary to the terms of the modification. The
fraud claim is premised on OneWest's alleged state-
ments advising Vida that loan modification was un-
derway and "that no foreclosure sale would take
place." (Complaint ¶ 31 .) Vida relied on these alleg-
edly false statements, to her detriment, in failing to
pursue remedies to halt the foreclosure. The request
for declaratory relief references the defendants' un-
clean hands as the cause of Vida's property loss and
seeks equitable relief to reinstate her as the property
owner under the "agreed upon terms" as referenced
in the complaint. (Complaint ¶ 40.)

Vida alleges the following facts. Vida is the former
owner of a property "located at 31995 S Grimm Rd.,
Molalla, OR 97038." (Comp .¶ 2.) A deed of trust,
dated January 10, 2007, and recorded January 16,
2007, named OneWest as the trust's beneficiary and
Mortgage Electronic Registration Systems, Inc.
("MERS") as its nominee. In December 2008, Vida
was "accepted into [ **HAMP**] ... after missing several
payments[.]" (Comp.¶ 6.) Reduced mortgage pay-
ments were scheduled and timely paid by Vida in
January, February, and March 2009. *Id.* In March
2009, Vida was informed that she did not qualify for
loan modification under **HAMP** because she did not
meet the income requirements. (Comp.¶ 7.)

On April 30, 2009, MERS assigned the deed of trust
of the subject property to OneWest. (Comp.¶ 9.) The
assignment was recorded on May 6, 2009, as was a
"Notice of Default and Election to Sell." (Comp.¶
10.) Vida was notified in May 2009 of the planned
sale at public auction of the subject property, sched-
uled for September 9, 2009. (Comp.¶ 11.)

In June 2009, Vida notified OneWest of a change in
her income and OneWest encouraged her to reapply
for a loan modification. Vida submitted all of the
requested documentation and was informed that she
was "accepted into the **HAMP** Trial Period Program

Slip Copy, 2010 WL 5148473 (D.Or.)
**(Cite as: 2010 WL 5148473 (D.Or.))**

and was given a reduced monthly payment amount." (Comp.¶ 13.) On July 3, 2009, Vida received a letter from OneWest confirming receipt of said documentation. (Comp.¶ 12.) In August 2009, Vida was informed, both verbally and in writing, that the foreclosure of her home was on hold in light of the **HAMP** trial period. Nonetheless, Vida's home was sold at a trustee's sale, as originally scheduled, on September 9, 2009.

**\*2** On September 10, 2009, OneWest returned Vida's modified loan payment and informed her that it did not represent the total amount due. On September 20, 2009, Vida contacted OneWest and was told that the trial period had been cancelled because OneWest had not received all of the necessary documentation. After investigation, however, OneWest admitted that the paperwork was not the issue and that the modification had been cancelled because Vida was not income-eligible. (Comp.¶ 18.) On October 9, 2009, OneWest informed Vida that her property had been sold in a foreclosure sale. (Comp.¶ 19.) Vida was notified that her property had been purchased by FNMA when a notice was posted on her door on October 13, 2009. (Comp.¶ 20.)

OneWest then informed Vida, by letter, that she was not qualified for modification under **HAMP**, though "they were willing to work with [her] to determine if there [were] any further alternatives to foreclosure." (Comp.¶ 22.) This letter was received by Vida on October 23, 2009.

*Legal Standard*

In *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), the Supreme Court addressed the pleading standard to adequately state a claim under the Federal Rules of Civil Procedure. Rule 8(a) governs pleadings and calls for "a short and plain statement of the claim showing that the pleader is entitled to relief...." FED.R.CIV.P. 8(a) (2009). In 2007, the Court explicitly departed from the often-cited standard set forth in *Conley v. Gibson,* 355 U.S. 41 (1957). The *Conley* standard held that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 45-46. The *Twombly* court rejected this as an inappropriate pleading standard, and indicated that it had been taken out of its original context

and should be "forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." 550 U.S. at 563.

Not only did *Twombly* depart from the previous standard, it emphasized the need to include sufficient facts in the pleading to give proper notice of the claim and its basis: "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal citations and brackets omitted). Even so, the court noted that "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.' " *Id.* at 556 (quoting *Scheuer v.. Rhodes,* 416 U.S. 232, 236 (1974)).

**\*3** Since *Twombly,* the Supreme Court made clear that the pleading standard announced therein is generally applicable to cases governed by the Federal Rules of Civil Procedure, and not just those cases involving antitrust allegations.

> As the Court held in *Twombly,* the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."

*Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937, 1949 (May 18, 2009) (quoting *Twombly,* 550 U.S. at 555) (internal citations omitted); *see also Villegas v. J.P. Morgan Chase & Co.,* No. C 09-00261 SBA, 2009 U.S. Dist. LEXIS 19265, at \*7-8 (N.D.Cal. Mar. 6, 2009) ("The *Twombly* standard, moreover, is of general application and is as easily applied to wage and hour litigation as antitrust."). The Court went on to identify two principles informing the decision in *Twombly.* The first was that, although the court must assume true all facts asserted in a pleading, it need not accept as true any legal conclusions set forth in a pleading. The second principle requires that the complaint set forth a plausible claim for relief and not

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 5148473 (D.Or.)
**(Cite as: 2010 WL 5148473 (D.Or.))**

merely a possible claim for relief. The Court advised that "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft,* 129 S.Ct. at 1950 (citing *Iqbal v. Hasty,* 490 F.3d 143, 157-158 (2nd Cir.2007)). In conclusion, the Court wrote: "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

*Discussion*

I. Breach of Contract

Defendants contend that Vida may not state a claim for breach of contract because **HAMP** does not provide for a private right of action. Several district courts in this circuit have held that **HAMP** does not authorize a private right of action against participating lenders.

In *Marks v. Bank of America,* No. 03:10-cv-08039-PHX-JAT, 2010 WL 2572988 (D. Ariz. June 22, 2010), the plaintiff alleged a claim for breach of contract as a third party beneficiary to a contract, arising under **HAMP**, between Bank of America and the U.S. Treasury. The court held that the plaintiff lacked standing to sue as she was not an intended beneficiary of the contract between the contracting parties. The court also interpreted the plaintiff's "allegations regarding breach of contract [as] simply an attempt at enforcing a private right of action under **HAMP**." *Id.* at *5. The court dismissed the claim on the grounds that **HAMP** does not permit a private right of action.

*4 The court in *Manabat v. Sierra Pacific Mortgage Co.,* No. CV F 10-1018 LJO JLT, 2010 WL 2574161 (E.D. Cal. June 25, 2010), also concluded that **HAMP** did not provide a private right of action. The court reasoned that, in specifically providing for private actions against the Secretary of the Treasury but not against others, Congress demonstrated that it "did not intend to create a private right of action for violation of **HAMP** against lenders that received **HAMP** funds." *Id.* at * 11 (internal quotation marks omitted). The court construed Manabat's claim, that defendants Chase and MERS wrongfully failed to suspend their

foreclosure action to allow Manabat to pursue alternatives to foreclosure, as a claim for failure to modify her loan in violation of **HAMP**. Upon so construing Manabat's claim, the court dismissed it for lack of a private right of action.

In *Hoffman v. Bank of America,* No. C 10-2171 SI, 2010 WL 2635773, at *3 (N.D. Cal. June 30, 2010), the court agreed with its fellow district courts that "a borrower is not a third party beneficiary[ ]" to a **HAMP** contract between the lender and the Department of the Treasury. The plaintiff in Hoffman also alleged a breach of contract claim as "a stand alone right to enforce **HAMP**." *Id.* at *5. The court wrote: "As previously discussed, lenders are not required to make loan modifications for borrowers that qualify under **HAMP** nor does the servicer's agreement confer an enforceable right on the borrower." *Id.*

Here, Vida contends that her breach of contract claim is independent of **HAMP** and is based on principles of the common law of contract. Vida seeks to distinguish the cases cited by Defendants holding that **HAMP** provides no private right of action on the ground that plaintiffs in those cases asserted a right to loan modification arising out of **HAMP** whereas Vida asserts that OneWest breached an existing agreement to modify Vida's loan. Thus, she contends, her interest is not based on an entitlement established by **HAMP**, but rather on an agreement formed under the common law principles of offer and acceptance. In *Wright v. Bank of America, N.A.,* No. CV 10-01723 JF (HRL), 2010 WL 2889117 (N.D.Cal. July 22, 2010), the court distinguished a lender's obligation to modify a loan from its obligation to evaluate a loan for modification, noting that **HAMP** gave rise to the latter, but not the former.

The notion that a claim disallowed under **HAMP** may proceed under an alternate common law theory was addressed in *Aleem v. Bank of America,* No. EDCV 09-01812-VAP (RZx), 2010 WL 532330 (C.D.Cal. Feb. 9, 2010). There, the court distinguished between claims brought under **HAMP** and common law claims brought independent of **HAMP**. The plaintiffs moved to remand the claims to state court on the ground that they arose under state law and, thus, the federal court lacked jurisdiction. The defendants argued that the claims either arose under or implicated federal laws. The court concluded that "to the extent Plaintiffs' [unfair business practices]

Slip Copy, 2010 WL 5148473 (D.Or.)
**(Cite as: 2010 WL 5148473 (D.Or.))**

claim [was] based upon the National Housing Act or **HAMP**, Plaintiffs ha[d] failed to state a claim." *Id.* at *3. The plaintiffs' claims were dismissed to the extent predicated on federal law, i.e., **HAMP**, and remanded to state court to the extent they were premised on state law.

**\*5** Vida's essential argument is this: although her breach of contract claim is premised on representations made in the course of the **HAMP** approval process and, to some extent, on representations made in **HAMP** documents themselves, it is not premised on an entitlement arising under **HAMP** and, thus, does not depend on a private right of action also arising under **HAMP**. Rather, the claim depends on representations made by OneWest which themselves amounted to an enforceable promise to modify her contract and refrain from initiating foreclosure.

The court agrees with the district courts in this circuit that **HAMP** does not authorize a private right of action against participating lenders. That said, the court does not agree with Defendants' premise that they are wholly immunized for their conduct so long as the subject transaction is associated with **HAMP**. Even so, the facts and allegations as pleaded in this case are premised chiefly on the terms and procedures set forth via **HAMP** and are not sufficiently independent to state a separate state law cause of action for breach of contract.

In setting out her allegations of breach of contract, Vida relies primarily on representations made in uniform **HAMP** documents. Specifically, Vida refers to the document governing the **HAMP** trial period ("the Trial Period Plan" or "the Plan"). The Plan states:

> If I am in compliance with this Trial Period Plan (the "Plan") and my representations in Section 1 continue to be true in all material respects, then the Lender will provide me with a **Home Affordable Modification** Agreement ("Modification Agreement"), as set forth in Section 3, that would amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage.

(Complaint, Exhibit 6 at 1.) Thus, Vida argues, to the extent that she complied with the Plan and made no material misrepresentations, she was entitled to modification of her loan. In other words, this Plan acted as an offer which Vida subsequently accepted by timely

complying with all of its requirements. The Plan also states that "the Lender will suspend any scheduled foreclosure sale," so long as Vida complies with the Plan obligations, though it also provides that "any pending foreclosure action will not be dismissed and may be immediately resumed from the point at which it was suspended if this Plan terminates[.]" *Id.* at 2. Vida next cites a letter she received from IndyMac Mortgage Services which confirms its receipt of her "signed modification agreement[,]" and references the upcoming loan modification process. (Complaint, Exhibit 5.) As Vida points out, this document does not refer to **HAMP** or the Trial Period Plan.

The flaw in Vida's logic is that the alleged offer to modify came about and was made wholly under the rubric of **HAMP**, as were Vida's alleged actions in acceptance of the offer, i.e., submitting the required documentation, and the alleged consideration, i.e., remitting reduced loan payments. Vida fails to state a cause of action independent of **HAMP**, for which there is no private right of action.

**\*6** Vida also contends that, even if the claim arises under **HAMP**, she was entitled to modification because she met the eligibility requirements under **HAMP** and accepted OneWest's offer to modify. She cites the **HAMP** Supplemental Directive 09-01, which states:

> All loans that meet the **HAMP** eligibility criteria and are either deemed to be in imminent default (as described above) or 60 or more days delinquent must be evaluated using a standardized NPV test that compares the NPV result for a modification to the NPV result for no modification. If the NPV result for the modification scenario is greater than the NPV result for no modification, the result is deemed "positive" and the servicer MUST offer the modification.

(Defendants' Exhibit 1 at 4.) As Defendants note, a loan servicer is not obligated to proceed with a loan modification where the Net Present Value ("NPV") test reveals that a foreclosure would be less costly than a modification. Defendants cite *Williams v. Geithner,* Civil No. 09-1959 ADM/JJG, 2009 WL 3757380 (D.Minn. Nov. 9, 2009),[FN1] for the proposition that a loan servicer is permitted "the exercise of some discretion, including calculation of the NPV" in the modification approval process. *Id.* at *6. This,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 5148473 (D.Or.)
**(Cite as: 2010 WL 5148473 (D.Or.))**

Defendants argue, underscores the conditional nature of the modification process.

> FN1. In *Williams,* the plaintiffs asserted a constitutional claim for procedural due process and, thus, the court analyzed whether **HAMP** created a protected property interest "the denial of which must comport with due process protections[,]" concluding that it did not. *Id.* at \*7.

Again, there is uniform agreement that **HAMP** does not provide for a private right of action and, even if Vida could establish a violation of **HAMP**, she lacks standing to assert such a claim. Furthermore, the Plan states explicitly that modification is not guaranteed until the modification process is complete, and not at any intermediate point in the modification process. The Trial Period Plan is explicitly not an enforceable offer for loan modification. It states:

> I understand that the Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (i) I meet all of the conditions required for modification, (ii) I receive a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this plan.

(Defendants' Exhibit 3 at 3.) The agreement also provides that if the lender does not furnish the borrower with "a fully executed copy of this Plan and the Modification Agreement[,]" the loan modification will not take place and the lender is entitled to pursue rights and remedies otherwise available under the loan. *Id* . at 2.

At hearing, Vida cited a recent decision by this court, wherein the court wrote:

> This court agrees with [the plaintiff] that the Oregon courts allow the oral modification of a written contract containing an express no-oral-modification clause. However, to be binding, the terms of an oral modification of written contract must be established by clear and convincing evidence, and must be supported by consideration.

**\*7** *Barinaga v. JP Morgan Chase & Co.,* No. 10-CV-266-AC, 2010 WL 4338326, at \*5 (D.Or. Oct. 26, 2010) (citations omitted). Thus, it is possible that Vida could base her claim of contract formation on the oral representations of Defendants that she seeks to include in an amended pleading. However, even if Vida could so allege a contract modification based on oral representations alone, she would still be unable to allege consideration for the loan modification. This issue was addressed squarely in *Barinaga,* where the court concluded that payments made during a loan modification trial period did not qualify as consideration because they did not represent "anything other than what [the plaintiff] was already obligated to [do] under the terms of the Loan." *Id.* Vida has stated no other basis for consideration and, thus, cannot state a claim for breach of a contract that was modified by oral representations.

For the reasons above stated, Defendants' motion to dismiss Vida's breach of contract claim is granted.

*II. Fraud*

Vida alleges that OneWest fraudulently represented that foreclosure of the subject property would be postponed during the loan modification process. A claim of fraud must set forth the following elements:

> '(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) [the speaker's] intent that it should be acted on by the person and in the matter reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) [the hearer's] reliance on its truth; (8) [the hearer's] right to rely thereon; (9) and [the hearer's] consequent and proximate injury.'

*Merten v. Portland General Electric Co.,* 234 Or.App. 407, 416, 228 P.3d 623 (2010) (citing *Wieber v. FedEx Ground Package System, Inc.,* 231 Or.App. 469, 480, 220 P.3d 68 (2009)) (brackets in original). To adequately allege such a claim in federal court, the plaintiff must comply with the requirements of Federal Rule of Civil Procedure 9(b), which provides that allegations of fraud be stated "with particularity[.]" FED.R.CIV.P. 9(b). To state with particularity, the plaintiff must "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation."

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 5148473 (D.Or.)
**(Cite as: 2010 WL 5148473 (D.Or.))**

*Schrieber Distrib. Co. v. ServWell Furniture Co., 806 F.2d 1393, 1401 (9th Cir.1986).*

Defendants argue that Vida's allegations fail to adequately state a claim of fraud. Specifically, Defendants argue that the relevant communications referenced in the complaint do not state that the loan modification was definite, nor do they state that foreclosure would not occur. Defendants refer to the July 3, 2010, letter confirming receipt of the signed modification agreement, as well as the Trial Period Plan. The letter contains a handwritten notation which states: "FORECLOSURE, Sept. 9th, Put on hold." (Complaint, Exhibit 5.) Defendants also cite the Plan, which states: "any pending foreclosure action will not be dismissed and may be immediately resumed from the point at which it was suspended if this Plan terminates," without any additional notice to the borrower. (Complaint, Exhibit 2 at 2.) Defendants also argue that the verbal representations alleged by Vida have not been pleaded with sufficient particularity.

**\*8** Vida responds that she has adequately pleaded her claim of fraud by submitting documentary evidence of that fraud. She also points to an email which references the subject property and states: "As of 08/24/09 the foreclosure for the above listed property has been placed on hold for **HAMP** review. Regional Trustee Services will maintain the hold status unless directed otherwise by our lender OneWest formerly Indy-Mac." (Complaint, Exhibit 7.) Vida also argues that, to the extent verbal representations are not pleaded with particularity, it is because Defendants are in possession of the relevant records and Vida will not have access to those records and facts until after discovery begins.

As currently pleaded, Vida has failed to state a claim for fraud. First, the cited communications do not guarantee that Vida's property would not be foreclosed on. Rather, they merely state that the foreclosure was put on hold. Specifically, the August 24, 2009, email stated that foreclosure will remain on hold unless the lender directs otherwise. Second, the Plan itself states that the foreclosure may be recommenced at any time upon termination of the Plan. Under these allegations, Vida has not stated facts sufficient to allege that Defendants acted fraudulently in representing to Vida that her loan was provisionally on hold and subsequently recommencing foreclosure. Defendants motion to dismiss this claim is granted.

Vida seeks leave to replead her fraud claim to include allegations regarding verbal representations by Defendants via their agents. Vida claims that Defendants' unequivocal representations amount to fraud and cure the pleading deficiencies identified above. This request is granted.

*III. Preemption by State Law*

Oregon Revised Statutes 86.740 provides that "at least 120 days before" a foreclosure sale, notice must be served upon or mailed to:

(a) The grantor in the trust deed.

(b) Any successor in interest to the grantor whose interest appears of record, or of whose interest the trustee or the beneficiary has actual notice.

(c) Any person, including the Department of Revenue or any other state agency, having a lien or interest subsequent to the trust deed if the lien or interest appears of record or the beneficiary has actual notice of the lien or interest.

(d) Any person requesting notice as provided in ORS 86.785.

OR.REV.STAT. 86.740(1) (2009). Defendants argue that Vida's fraud claim, to the extent it is premised on a failure to notify her of the foreclosure sale, is preempted by ORS 86.742. Defendants specifically cite ORS 86.742(6), which states: "The remedies described in subsections (1) to (5) of this section shall be the sole remedies available to a person entitled to notice of foreclosure by advertisement and sale under ORS 86.740(1)(c)." OR.REV.STAT. 86.742(6) (2009).

Section 6, as Vida points out, refers specifically to persons entitled to notice under ORS 86.740(1)(c), which mandates notice to junior or subsequent lien holders. Vida is the grantor in the trust deed and is not a junior or subsequent lien holder. Therefore, ORS 86.742(6) does not provide that her sole remedy is under that statute.

**\*9** Defendants cite *Stations West, LLC v. Pinnacle*

Slip Copy, 2010 WL 5148473 (D.Or.)
**(Cite as: 2010 WL 5148473 (D.Or.))**

*Bank of Oregon,* Civil No. 06-1419-KI, 2007 WL
1219952 (D.Or. Apr. 23, 2007), in support of their
preemption argument. In this case, the plaintiff al-
leged violations, by the trustee, of the notice re-
quirements in ORS 86.735 and 86.745. The defen-
dant trustee sought dismissal of these claims on the
ground that the plaintiff failed to adequately plead
under ORS 86.742 that it did not receive actual notice
of the sale, that it could and would have cured the
default, and that it suffered actual damages. The court
wrote: "The only way plaintiff can challenge [the
trustee's] failure to comply with statutory obligations,
including ORS 86.735, in arranging for the nonjudi-
cial foreclosure of the trust deed is by bringing a suit
under ORS 86.742." *Id.* at *7. Thus, where the plain-
tiff's claim is premised on the statutory notice re-
quirements, the proper avenue of relief is through a
claim under ORS 86.742.

In the present case, Vida does not assert a claim
premised on a failure to comply with statutory notice
provisions. Rather, Vida's claim is premised on De-
fendants' representations that foreclosure on the sub-
ject property would be suspended for the duration of
the modification process were fraudulent and resulted
in Vida's detrimental reliance. Defendants' attempt to
reframe Vida's fraud claim as one for statutorily in-
adequate notice does not alter this analysis.

For these reasons, Vida's fraud claim is not pre-
empted by ORS 86.742.

*IV. Promissory Estoppel*

At hearing, Vida requested leave to replead to include
a claim for promissory estoppel. Defendants neither
objected to the request nor sought an opportunity to
brief this issue. As such, because Vida should be
given leave to replead her complaint on her fraud
claim, she also should be allowed to include a prom-
issory estoppel claim. Accordingly, such leave is
granted.

*Conclusion*

For the reasons stated, Defendants' Motion to Dis-
miss (# 3) is GRANTED. Vida is permitted to re-
plead consistent with this disposition.

IT IS SO ORDERED.

D.Or.,2010.
Vida v. OneWest Bank, F.S.B.
Slip Copy, 2010 WL 5148473 (D.Or.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.